EVERETT MOHATT, APPELLANT, v. CARL OLSON, APPELLEE.

21 N. W. 2d 516

FILED FEBRUARY 1, 1946. No. 31976.

*P. J. Heaton* and *Torgeson & Halcomb,* for appellant.

*R. P. Kepler* and *Beatty & Clarke,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

SIMMONS, C. J.

Plaintiff sued to recover damages allegedly arising from the result of floodwaters being caused to back up on his land by an irrigation lateral constructed by defendant across a natural drainage that passed over plaintiff's and defendant's lands. So far as material here, defendant's answer was a general denial and a plea of affirmative defenses.

Trial was had. At the close of the plaintiff's case in chief, defendant moved for a directed verdict. The motion was sustained. Plaintiff appeals. We reverse and remand the case.

Plaintiff's contention here is that the waters involved in this action are floodwaters and not surface waters; that it is the duty of those who build structures across natural drainways to provide for the passage of waters which may be reasonably anticipated to drain there; that he who obstructs such a natural drain is liable if damages follow from the obstruction; and that the trial court erred in directing a verdict.

Defendant does not join issue on plaintiff's contentions save as to the direction of a verdict, but rather contends that the evidence establishes that a substantial amount of water from other sources had been added to the water for which it was claimed defendant was liable; that at most the combined water caused the damage; and that plaintiff failed to establish either that his damage would have occurred from waters for which it was claimed defendant was liable, or to allocate the damages caused by the waters for which it was claimed defendant was liable.

We summarize the evidence in the light of these contentions and weigh it in accord with the rule that "A motion for a directed verdict must, for the purpose of a decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and said party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the facts in evidence." Kline v. Metcalfe Construction Co., *ante* p. 389, 19 N. W. 2d 693.

Plaintiff is a tenant in possession of the north half of section 4, township 13 north, range 50, and defendant is the owner of section 3 immediately to the east and adjacent thereto, the lands being separated only by a county road running north and south.

Sidney Draw is a natural drainway or valley extending some one hundred miles and is approximately two miles in width at the land here involved. The lands of plaintiff and defendant lie in that valley. There is a well-defined channel in this valley or draw, which for convenience we will call the primary channel. It is what is known as a dry bed carrying water only in times of heavy rains. It meanders across the lands of plaintiff and defendant generally in a west to east direction. Plaintiff's tilled land in this valley was to the north of this primary channel. South of the channel the land rises abruptly to a hill, but to the north it is generally flat.

Plaintiff's land north of the primary channel slopes

toward it for a few hundred feet, then further north slopes away from it and then again toward it. There also is a general slope of the lands toward the east. This formation of the land creates a slight depression north of the primary channel and creates what plaintiff terms an overflow channel, which for convenience we will term a swale. This swale at the line between the lands of plaintiff and defendant is about two hundred feet wide and is a foot or more below the surrounding land. It goes generally east across plaintiff's land and then defendant's land. This swale begins some distance to the west on plaintiff's land so that high waters coming down and overflowing the primary channel find an escape down the swale.

In 1941, defendant built an irrigation lateral north and south across this swale at his west line. This lateral ran south to the primary channel where it was taken across that channel by a flume set in concrete structures at either end and supported by a framework. The top of the bank of the irrigation lateral was three feet or more high at the bottom of the swale and higher than the land to the west for its entire length. The evidence is that proper construction would have been to place a flume across the swale and thereby allow the natural drainage to pass waters through in its accustomed manner.

The north and south road was graded and crossed the primary channel where there was a bridge. The flume was east of and parallel with the bridge.

So, generally, the picture here is that of a primary channel and a swale running generally east and west, and a highway and bridge, a lateral and flume, running north and south.

At the bridge the primary channel is 150 to 200 feet wide at the top and its bed 7.3 feet below the floor of the bridge. The bed is generally about six feet below the land to the north. The bridge was 20 feet long, with earth embankment or fills being built partly across the channel at either end of the bridge. The height of the flume is not definitely fixed by the evidence. It may have been a few inches above

or below the bridge or equal to it. Its length is not shown, except that it was as long as, if not longer than, the bridge. Neither is the size of the flume shown. The roadbed was about equal to or possibly a little higher than the land through which it passed.

The land of plaintiff was practically level from the primary channel to the north line, with the exception of the elevation between the swale and the primary channel and the depression of the swale. Plaintiff's buildings were located in the northeast corner of his property and to the north of the swale.

That, generally, was the lay of the land when the flood occurred in 1941 that caused the damage resulting in this litigation. With the exception of the irrigation lateral and flume, the condition of the two pieces of land was the same in 1937 as in 1941.

In 1937, a flood occurred in this valley. The waters came down the primary channel, overflowed its banks, came down the swale and flooded plaintiff's property up to within six feet of his house but flooded none of his buildings. It flowed along the swale across the highway and onto and over defendant's land. It was high enough to flow over the bridge and over the highway, except at the high elevations, and covered all the land except the high elevations.

In the early hours of the morning of June 9, 1941, plaintiff was aroused and found that floodwaters had come down the valley, flooded his place and overflowed the porch of his house. At four o'clock that morning the water was in all his farm buildings except the barn, was high enough to flow into his cellar under the house and into his well. It was then across the roadway and his lands from his house to the bridge, except on the high places. It had been checked at the irrigation lateral. The bank of the lateral was opened at that time at the low point of the swale. The water began to flow down across defendant's land and began to recede in plaintiff's yard and around his buildings. By noon it had ceased to flow across the road. Water remained about plaintiff's yard and in the low places for several days. The

flume washed away during the flood; the bridge and abutments remained in place.

The floodwaters in 1937 spread out in plaintiff's pasture on the west side of his place almost twice as much as in 1941. It also is established that other floods had occurred in the valley, but the extent of those was not shown.

Plaintiff's evidence of property damage falls into two general classifications: (1) Growing crops damaged and destroyed on his farm lands; (2) Personal property damaged and destroyed in and around his buildings, pigs killed, and his well contaminated and the water rendered unfit for human consumption for several months.

We have recently stated the rules of law that are applicable here. "Where water appears upon the surface of the ground in a diffused state with no permanent source of supply or regular course, its flow is valuable to no one and it is regarded as surface water. But where such waters flow into and become a part of a stream, they cease to be surface waters and are then a part of the running water of the stream. Likewise, the running waters of a stream may at flood stage spill out upon low lands, become isolated and again be classified as surface waters. * * * Necessarily, floodwaters which have lost their identity with those of a living stream and returned to the classification of surface waters would be governed by the rules applicable to surface waters. But when the waters causing damage retain their identity with those of a stream, they cannot be properly treated as surface waters and must necessarily be treated as floodwaters when without the banks of the stream. This compels the holding that a stream which is accustomed to extend itself beyond its banks in times of high water and to flow over the adjacent lands in its flood plane in a broader stream, retains its character as a live stream and the law relating to floodwaters applies." Cooper v. Sanitary District No. 1, *ante* p. 412, 19 N. W. 2d 619.

Likewise, in the recent case of Faught v. Dawson County, *ante* p. 274, 19 N. W. 2d 358, we restated the rule long followed in this state that " * * * it is the duty of those who

build structures across natural drainways to provide for the natural passage through such obstruction of all waters which may be reasonably anticipated to drain there. This is a continuing duty." We further stated: "The rule as to allocation of damages is applicable where damage is caused by the several and independent negligent acts of two or more parties, so that it may be found that the act of each resulted in some injury and the consequences of their acts are separable. Each tort-feasor is then held liable only for so much of the injury as was caused by his act. * * * The rule requires that plaintiff establish that a negligent act of the defendant was the proximate cause of the damage which he suffered. Where a substantial amount of water from another source or sources has been added to the water for which defendant is liable, and the combined waters have caused the damage, then it is incumbent upon the plaintiff to establish either that his damages would have occurred from the waters for which defendant is liable, or to establish the amount of his damage that had been caused by the waters for which defendant is liable."

We think this evidence establishes that there was a commingling of waters from different sources on plaintiff's land. The sources of that water were those from the overflow of the primary channel, the elevation of which could have been raised in part by the obstruction of the bridge and the fill at that point. There is no evidence sufficient to show that the flume contributed to the obstruction at the bridge. There also were the waters which were backed up by the irrigation lateral. There is nothing in this record to show the location of the growing crops with certainty. The evidence indicates that some of them were within the swale and the area that would have been flooded by the high waters without regard to the obstruction of the irrigation lateral. As to that element of damage, we think the evidence fails to show that plaintiff's damages would have occurred from the waters for which defendant is liable or to establish the damage that had been caused by waters for which defendant is liable.

But the damage which plaintiff suffered to his property in and around his buildings and in his well presents a different situation. The irrigation lateral was the only physical condition materially different in the situation in 1937 and that in 1941. In 1937 and 1941, the water was high enough to go over plaintiff's lands, the bridge and the highway in substantially one body of water. There is some evidence, as pointed out herein, that the volume of water was greater in 1937 than in 1941. In 1937, the waters that came near plaintiff's buildings passed down the swale across defendant's lands without damage to the property therein. In 1941, those waters were not permitted to flow down the swale, the elevation of the water was higher and the buildings were flooded to plaintiff's damage. When the irrigation lateral was cut and those waters released, the flood level receded and the water drained away. We think that evidence sufficient to take the issue to the jury as to whether or not the damage occurred from the waters for which defendant is liable. Accordingly, we are of the opinion that the trial court erred in sustaining defendant's motion for a directed verdict. The judgment of the trial court is reversed and the cause remanded.

REVERSED.