GERHARD D. L. FRESE ET AL., APPELLEES, V. JOE MICHALEC, APPELLANT.

28 N. W. 2d 197

Filed June 27, 1947.    No. 32218.

*Mark J. Ryan* and *Alfred D. Raun,* for appellant.

*Robert G. Fuhrman,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CARTER, J.

This is an action for a mandatory injunction to require the defendant to remove a dike which he constructed on his land to prevent the waters of Rattlesnake Creek from flooding over onto it, and for a permanent injunction enjoining the defendant from constructing or maintaining an embankment interfering with the natural flow of flood waters from Rattlesnake Creek across his land. The trial court found for the plaintiffs and the defendant has appealed.

The defendant is the owner of the southeast quarter and the south half of the northeast quarter of Section 17, Township 25, North, Range 6, East of the 6th P. M. in Thurston County. Plaintiffs are owners and tenants of owners of lands in Sections 17, 8 and 16, and allege that their lands and crops have been damaged by the waters of Rattlesnake Creek as the result of the construction of the dike hereinafter described.

Rattlesnake Creek is a small winding stream which

flows from the southwest across Section 18 into Section 17 and onto the land of the defendant. It enters defendant's land a little south of the northeast corner of the southwest quarter of Section 17. It then makes a loop resembling a horseshoe with the open end to the west and leaves defendant's land in a northwesterly direction at a point approximately 700 feet south of the northwest corner of his land. The stream proceeds north a little more than a quarter of a mile and turns in an easterly direction until it reaches a point near the northeast corner of Section 17 where it turns in a southeasterly direction. Thereafter it follows a southeasterly course approximately a quarter of a mile east of defendant's land. The following map of the area more adequately pictures the relation of the stream to the lands owned or leased by the parties to this litigation.

The plaintiffs offered the evidence of many witnesses long acquainted with Rattlesnake Creek, who testify that during all the years they have known defendant's land, Rattlesnake Creek has spilled over its banks on the eastern side of the horseshoe bend. These waters flowed across defendant's land in a northeasterly direction to the northeast corner thereof, where they ordinarily passed under the highway bridge located at that point, thence east to Rattlesnake Creek, where it pursues a southwesterly course in Section 16. In cases of exceptionally heavy rain the water traveled across defendant's land in such quantities that the bridge was unable to carry the full flow and it would spread out and flow across the highway on the east line of Section 17 near the bridge. These waters also found their way to Rattlesnake Creek over the Frese land in Section 16.

The waters thus spilled out of the creek at the eastern side of the horseshoe bend followed a fixed course to the northeast and did not remain long on defendant's land. While the evidence is somewhat in conflict, the preponderance of the evidence is that, except for small depressions here and there, these flood waters were not trapped on defendant's land, nor did they become diffused surface waters.

Plaintiffs' engineer testifies that as Rattlesnake Creek approaches the horseshoe bend on defendant's land it has considerable fall. A short distance west of the half section line, between the east and west halves of Section 17, it begins to level off, with the result that after heavy rains it tended to pile up in the horseshoe bend and flood over the eastern bank thereof at the point where defendant constructed the dike constituting the subject of this suit. The northeast corner of defendant's land is five feet lower in elevation than at the east base of the dike constructed by the defendant. The engineer further testifies that there are evidences of a more or less defined drainageway, or swale, from the east bank of the dike to the northeast corner of

defendant's land, although no definite channel exists.

.The evidence shows that in 1945 defendant employed a contractor to construct a new ditch across the open end of the horseshoe bend just inside his west line fence, connecting the channel of Rattlesnake Creek immediately after it enters defendant's land from the southwest with the channel at a point a short distance before it leaves defendant's lands in a northwesterly direction. On the east bank of this channel a dike estimated from six to eight feet in height was constructed, which prevented the waters from spilling over and passing across defendant's land as they did in former times. In 1945 and 1946 this resulted in a flooding and damaging of the lands of plaintiffs in Sections 17, 8 and 16, shown on the map as belonging to Lucy Schutte Suhr, Theodore H. Suhr, John D. and Loraine Claussen, G. D. L. Frese, H. H. Burmester, and others. The testimony shows that these lands had never before been flooded from this source and that the flooding complained of resulted from the ditch and dike construction hereinbefore described.

The defendant offered evidence to the effect that there was no overflow channel or drainage course from the horseshoe bend to the northeast corner of his land. The evidence offered by him tends to establish that these flood waters spilled over the bank of Rattlesnake Creek and were trapped on his land, spreading out and percolating away only after several days time. The preponderance of the evidence, however, does not sustain this theory.

Defendant produced evidence, also, that the flooding complained of was caused primarily from a filling of Rattlesnake Creek in the southwest quarter of Section 16 to permit it to be "farmed across" at that point. There is evidence that on one occasion a road grader was used to smooth down the banks so that farm machinery could be driven across the creek. This work is alleged to have consumed an hour and one-half in

time. There is no other evidence of damming or interfering with the flow of the waters of Rattlesnake Creek in this area.

The evidence does show that Rattlesnake Creek progressively decreased in size as it proceeds through and beyond the southwest quarter of Section 16. The evidence shows, however, that this condition was brought about by a change in course of Rattlesnake Creek. It is shown that on or about July 5, 1945, the creek broke through to a large drainage ditch a short distance to the east of it. This break-through occurred near the point where Rattlesnake Creek crosses the north line of the southwest quarter of Section 16, and followed the east and west center line of Section 16 to the east until it reached the drain.

It is clear from the evidence that any interference with the flow of Rattlesnake Creek in and below the southwest quarter of Section 16, shown by the record before us, was not a contributing factor in causing the flood damage of which complaint is made. The lack of a well-defined channel and a live stream is primarily due to the break-through to the large drain to the east.

We conclude from a consideration of all the evidence that the straightened channel with the dike on the east bank thereof, which was constructed by defendant on his land as hereinbefore described, covers the area at which Rattlesnake Creek was wont to flow before the construction of the dike, and prevents the overflow flood waters of Rattlesnake Creek to spill out and pass over defendant's land as it had done for many years prior to the construction of the dike; that instead, the dike causes the flood waters of Rattlesnake Creek, in excess of the capacity of its channel, to back up and flow onto the lands of these plaintiffs and damage them by depositing mud and debris thereon.

It is clear that such damage to plaintiffs' lands and crops will occur periodically in the future if the dike is permitted to remain in its present condition.

It is the established rule in this state that a stream which is accustomed to spill flood waters beyond its banks in times of high water and to flow over adjacent lands in its flood plane, and which flood waters return to the channel of the stream at points farther down stream, remains a live stream, and the spilled waters so flowing out are flood waters and not diffused surface waters. Mohatt v. Olson, 146 Neb. 764, 21 N. W. 2d 516; Cooper v. Sanitary District No. 1, 146 Neb. 412, 19 N. W. 2d 619. Such flood plane must be considered as a portion of the channel of the stream, and structures or obstructions tending to dam the water back upon property of adjacent owners cannot properly be constructed or maintained. Cooper v. Sanitary District No. 1, *supra;* Snyder v. Platte Valley Public Power and Irrigation District, 144 Neb. 308, 13 N. W. 2d 160. Where a person constructs a dam or dike that diverts flood water from its natural flood plane where it was wont to flow in its natural state for many years before the construction of the obstruction, injunction affords the proper remedy to relieve from the continuing damage from recurring floods which are certain to occur in the future and which are the proximate result of the dam or dike construction. The trial court was clearly right in granting the injunctive relief prayed for.

The defendant claims error in the refusal of the trial court to grant a continuance of the trial in order to permit him to secure additional evidence concerning elevations and other expert evidence bearing upon the case. It is evident that defendant should have anticipated the need of such evidence before the trial. No surprise is shown and due diligence appears to have been lacking. Under such circumstances the discretion exercised by the trial court in denying the continuance will not be disturbed.

AFFIRMED.