THOMAS R. P. STOCKER, APPELLEE, v. FRANK WELLS ET AL.,
APPELLANTS.

33 N. W. 2d 445

Filed July 16, 1948. No. 32384.

52

*Ferneau & Ferneau, Lee Kelligar, John C. Mullen,* and *Gerald M. Mullen,* for appellants.

*Kennedy, Holland, DeLacy & Svoboda, Armstrong & McKnight,* and *T. R. P. Stocker,* pro se, for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

SIMMONS, C. J.

In this action plaintiff sought and secured a mandatory injunction requiring the defendants to remove certain dikes upon their premises, and enjoining them from constructing, keeping, maintaining, repairing, or erecting any dike or dikes that would impede the natural flood-

waters of the Nemaha River. We reverse and dismiss as to the defendants Lehr, and affirm in part and reverse and remand in part as to the defendants Wells.

The lands involved, besides that owned by the plaintiff, are two separate tracts. One is owned by Frank B. Wells and Eugene M. Wells, minors. The other is owned by Vergil L. Lehr and Hazel M. Lehr, husband and wife. So far as this appeal is concerned, the action is one against Frank E. Wells, individually; Frank E. Wells and Adah B. Wells, guardians of said minors; and Vergil L. Lehr and Hazel M. Lehr. The Wells defendants will be referred to herein as the Wells, and the two Lehr defendants as the Lehrs.

Defendants' first argued assignment of error is that the trial court was unconsciously prejudiced against them or their defense, and that by reason thereof they did not have a fair trial. We have examined this record and find in it no basis for the contention of prejudice.

The cause is here for trial de novo. We summarize the evidence contained in a voluminous record, covering many days of oral testimony and numerous exhibits.

The Nemaha River and its tributaries drain an area of some 900 square miles. The lands involved here lie southeast of the city of Auburn and in the Nemaha River valley.

For brevity of description and better understanding of the factual situation, and without being accurate in detail, we have prepared and use a chart for the purpose of showing the relative positions of the lands, the physical conditions, and structures involved.

At this location the Nemaha River flows generally from the northwest to the southeast. Between 1909 and 1912, extensive drainage work was done on the Nemaha River. Its channel was changed so as to eliminate meanderings and a new channel was made through the lands involved in approximately a straight line as indicated on the chart.

Plaintiff's land, formerly in one piece, was bisected by the new channel so as to leave about 80 acres east of the river. The lands are higher at the river bank; going southwest from the river the elevation drops to a de-

pression or swale indicated on the chart by the broken line A to B. From there it rises gradually to the southwest of the lands involved, and beyond that to hilly, higher-elevation land.

About 1930, plaintiff's predecessor in title built a drain along the north line of the Stocker land, indicated by the letters C to D. In 1945, this drain was cleaned out and deepened, the removed dirt being placed to the south, forming a dike of a few feet in height. The testimony is in conflict as to whether or not it formed a continuous and effective dam across the land at that place. This change in 1945 was made with the approval of the land owners to the north, and in part at their expense. The evidence as to this drain and dike is that so far as effective as a dike, it withholds water from both the plaintiff's land and the defendants' land and is in nowise detrimental to defendants. We refer to this as the north dike.

Originally there entered plaintiff's land at E a live stream known as Codington Branch. It drains an area of four square miles. It flowed northeast, as indicated on the chart, thence southeast, crossed and recrossed the road between the Stocker land and the Wells land, and finally emptied into the Nemaha River at about point H. During the 1909 to 1912 drainage operations, a lateral was made so as to carry this stream from point F to G to H, and cut out its meander across the road. In 1930, plaintiff's predecessor in title dug a drain from E to G and diverted Codington Branch so that it ran in an artifical channel from E to H. In 1945, plaintiff cleaned out and enlarged this channel, placing the removed dirt to the north, for a distance east of point E, which distance we are unable to determine with any exactness. The evidence is that the changed Codington Branch structure is larger and better able to dispose of the waters flowing therein than was the natural channel. We refer to this as the Codington Branch.

During the river change work from 1909 to 1912,

waste dirt was thrown along the river bank from L to M for a distance of three-quarters of a mile or more. During the subsequent years parts of this bank were eroded, and sometime between 1942 and 1945, defendants Lehr filled in the eroded places, leaving a continuous dike from L to M generally parallel to the river. We refer to this as the Lehr dike.

During the winter of 1945-1946, the defendants Wells built a dike beginning at high ground at point K to point L, where it was connected with the Lehr dike by an "elbow." We refer to this as the Wells dike. This dike was about three-quarters of a mile in length and was built high enough, so it was intended, to prevent any waters flowing from the Stocker land onto the Wells land. The dirt for the dike was removed from the north side leaving an irregular-bottomed drain from point K to L, emptying into the river at about point L. The Lehrs had no part in the building of the Wells dike. With the completion of the Wells dike there was a continuous structure on the north and east sides of the Wells and Lehr lands from K to L to M. These are the structures which plaintiff sought to have removed and which the decree ordered removed.

The evidence shows that the Nemaha River has been subject to severe floods. When these floods occur, the water overflows the normal flow banks and, forming a stream down the swale A to B, as it continues to rise in the more severe floods, it overflows the entire valley with a flood channel from one and a quarter to one and a half miles wide in the area here involved. When those severe floods occurred prior to the building of the Wells dike, moving water covered the Stocker land to a depth of five feet or more at its lowest area, and flowed on down and across the Wells and Lehr lands. The result of the Wells dike then was to dam up and close approximately one-half of the flood channel of the river.

Defendants' evidence by expert engineers is that the

Wells and Lehr dikes constituted proper construction; that plaintiff should increase the north dike and likewise dike his east boundary and thereby confine the floodwaters to approximately the normal channel of the river.

The taking of evidence in the trial of the case closed in April 1947, and the case was taken under submission by the trial court in May 1947. Between the time of the construction of the Wells dike and the close of the trial there had been no severe floods in that area.

The evidence established that the effect of the Wells dike was to close off the outlet so that if floodwaters came they would be held on the Stocker land until able to escape through the remaining channel; that water on the Stocker land would damage or destroy growing crops depending on the variable factors of the amount and depth of water, the duration of the flood, the time held on the land, the time of the season, the condition of the crops, and the temperatures existing. The evidence is that resulting damage would also occur to the plaintiff's land east of the river.

On July 10, 1947, the trial court made general and special findings of fact and entered the following decree:

"IT IS THEREFORE ORDERED, adjudged and decreed that the defendants remove the dike or dikes in and upon and near their said lands which the defendants, their agents and legal representatives have constructed and which said dikes are described in the pleadings and which were the subject of this litigation, and that they, and each of them, their agents, servants, employees, legal representatives, heirs assigns or grantees, be and are hereby enjoined from constructing, keeping, maintaining, repairing or erecting any other dike or dikes thereafter which will impede the natural flood waters of the Nemaha River during times of flood, and that the costs of this action be taxed equally against the defendants; that defendants Ned Ray and Ed Stanton recover their costs from plaintiff.

"It is further ordered that the defendants shall have

sixty days from the date of this decree to comply with the requirements thereof and make report to the court showing that the terms of this decree have been fully complied with as to the removal of said dikes.".

Motions for a new trial were filed and evidence by affidavit and parol was taken and preserved, and is a part of the bill of exceptions. This evidence discloses that during the month of June 1947, there were four severe floods in the Nemaha River. The first one flooded the plaintiff's land to a depth of several feet. The Wells dike diverted the water to the east and it ran off after having been appreciably retarded and held on the plaintiff's land. The second flood, a week later, of greater volume, came and was again held back by the Wells dike for several hours, when that dike finally gave way and was washed out for a distance of 250 to 280 feet. The waters then flowed upon the Wells land, and the level of the water on the plaintiff's land dropped appreciably thereafter, although the flow was retarded by the remaining portions of the dike. The two subsequent floods passed down across the plaintiff's and Wells' lands without gaining the depth of the two earlier floods.

The trial court denied the motions for a new trial. This appeal followed.

Defendants' principal contention is that the decree of the district court is not supported by and is contrary to the evidence and the law. By section 25-1925, R. S. 1943, we are required to retry de novo the issues of fact complained of upon the evidence preserved in the bill of exceptions, and to reach an independent conclusion thereon.

The rule is: "The relief ordinarily granted in equity is such as the nature of the case, the law, and the facts demand, not at the beginning of the litigation, but at the time the decree is entered." Conrad v. Kaup, 137 Neb. 900, 291 N. W. 687.

The above summary constitutes our conclusions of the factual situation as preserved in the bill of exceptions,

subject to certain other conclusions to be hereinafter stated.

The law applicable to this situation has been repeatedly stated in our decisions.

"It is the duty of those who build structures across natural drainways to provide for the natural passage through such obstruction of all waters which may be reasonably anticipated to drain there. This is a continuing duty." Faught v. Dawson County Irrigation Co., 146 Neb. 274, 19 N. W. 2d 358.

That the Wells dike is a structure across a natural drainway is clear. That the defendants Wells did not provide for the natural passage through such obstruction of any water whatever is equally clear.

"* * * a stream which is accustomed to extend itself beyond its banks in times of high water and to flow over the adjacent lands in its flood plane in a broader stream, retains its character as a live stream and the law relating to floodwaters applies." Cooper v. Sanitary District No. 1, 146 Neb. 412, 19 N. W. 2d 619.

"The flood channel must be considered as a part of the channel of the stream and no structures or other obstructions can be placed in its bed which will have a tendency to dam the water back upon the property of upper riparian or adjacent owners." Cooper v. Sanitary District No. 1, supra.

"The owners or proprietors of lands bordering upon either the normal or flood channels of a natural watercourse are entitled to have its water, whether within its banks or in its flood channel, run as it is wont to run according to natural drainage, and no one has the lawful right by diversions or obstructions to interfere with its accustomed flow to the damage of another." Olson v. Roscoe, 149 Neb. 189, 30 N. W. 2d 664. See, also, Mohatt v. Olson, 146 Neb. 764, 21 N. W. 2d 516.

"Injunction is a proper remedy to prevent recurring damages to crops or continuing injury to lands by water unlawfully diverted from a natural watercourse over

or upon lands of adjacent or adjoining proprietors." Olson v. Roscoe, *supra*.

In Frese v. Michalec, 148 Neb. 567, 28 N. W. 2d 197, we said: "Where a person constructs a dam or dike that diverts flood water from its natural flood plane where it was wont to flow in its natural state for many years before the construction of the obstruction, injunction affords the proper remedy to relieve from the continuing damage from recurring floods which are certain to occur in the future and which are the proximate result of the dam or dike construction."

That the Wells dike constitutes an obstruction in a natural watercourse which constitutes a continuing and permanent injury to plaintiff's land is clearly demonstrated by this record. That recurring floods are bound to occur is demonstrated by the record. The construction of the Wells dike was obviously done in anticipation of recurring floods.

Defendants' testimony is that the Wells dike was also constructed to prevent water flowing upon the Wells land from the floodwaters of the Codington Branch. The same rules apply to those waters as apply to the floodwaters of the Nemaha River.

Defendants also contend that because plaintiff has built a drain and dike along the north side of his land, they have the right to do that along the south side of his land, and that plaintiff, having done what he seeks to prohibit the defendants from doing, is not in equity with clean hands, and that injunctive relief should be denied. In addition to the factual situation hereinbefore recited, the simple answer to that is that no one is here complaining about the maintenance of the north drain and dike on plaintiff's land. Defendants seek no relief against it.

The evidence is, however, that a part of the Wells dike on the west end is above the flood stage level of the Nemaha River. Plaintiff testified that that part of the dike is "harmless." Obviously, defendants Wells should

not be required to remove that part of their dike. We are unable to determine from the evidence just how much of the Wells dike falls within the harmless classification.

With the exception of that part of the Wells dike which is above the flood stage level of the Nemaha River, the decree of the trial court as to the defendants Wells and the Wells dike is affirmed. As to that part above the flood stage level of the Nemaha River, the judgment is reversed and the cause remanded with directions to take evidence as to the single issue as to where the flood stage level is and to remove that part of the Wells dike above that level from the operation of the decree.

Defendants, referring to that part of the dike removed by the June 1947 flood, contend that the decree requires them to remove a dike which did not exist when the decree was entered. The decree made no such requirement. It required the removal of the "dike or dikes in and upon and near their said lands." As modified herein, it makes that same requirement.

The Lehr dike is parallel to the river and parallel to the flow of the river both at normal and flood stages. So far as appears from this record, it does not in anywise interfere with the flow of the water from and across plaintiff's land. We see no basis for granting plaintiff injunctive relief as to the Lehr dike. Accordingly, the judgment of the trial court, insofar as it relates to the Lehr dike, is reversed and the cause as to the defendants Lehr is dismissed.

The judgment of the trial court is affirmed in part, reversed in part, and the cause remanded with directions, as to the defendants Wells. As to the defendants Lehr, the judgment is reversed and the cause dismissed,

The costs of the defendants Lehr are taxed to the plaintiff; all other costs are taxed to the defendants Wells.

AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED WITH DIRECTIONS.