HENRY WIESE ET AL., APPELLEES, v. ANTON H. KLASSEN ET AL., APPELLANTS.

129 N. W. 2d 527

Filed July 3, 1964. No. 35682.

Walter, Albert, Leininger & Grant, for appellants.

C. Thomas White, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

YEAGER, J.

This is an action in equity wherein Henry Wiese and Rose Wiese, plaintiffs and owners of the southeast quarter of Section 29, Township 20 North, Range 3 West of the 6th P.M., in Platte County, Nebraska, seek an injunction enjoining Anton H. Klassen and Orvilleen Klassen, defendants and owners of the south half of the southwest quarter of Section 28, Township 20 North, Range 3 West of the 6th P.M., in Platte County, Nebraska, which lands of the defendants immediately adjoin the lands of the plaintiffs along the eastern line, from maintaining a dike along a meandering creek. The land of the defendants whereon the dike is maintained is an 80-acre tract immediately east of the south one-half of plaintiffs' land.

The case was tried to the court and at the conclusion of the trial a judgment was rendered in which the injunction sought was granted. A motion for new trial was filed and overruled. From the judgment and the

order overruling the motion for new trial the defendants have appealed.

Involved in this action from a factual standpoint is a topographical consideration of a large area of land including the lands of the parties which has been described from the standpoint of elevations, the direction of the natural flow of water over it especially in times of heavy and extended periods of rain, speed of runoff, interference with flow, natural and artificial channels of flow, and effects of accumulation and disposition, particularly of delay.

In a consideration of these questions accuracy in detail is not possible since in the record accuracy is not found. Of necessity in this light generalities of information must be relied upon rather than authentic detailed information.

With this as background for a statement of what the case is about it will be stated that the lands involved in the action are in a valley and flood plain of a creek which is known as Shell Creek and which rises about 35 or 40 miles to the northwest near the village of Newman Grove and flows in a southeasterly direction to and through these lands. Apparently Shell Creek is a natural drainway from the source indicated to and through the lands of the parties here. There is no authentic information as to the elevations along or immediately adjacent to the way to the banks of the creek. Numerous elevations are indicated on exhibits but particular placements of these are not identified. It appears that the creek extends southeasterly through a flood plain of considerable width and that the lands involved here are within that plain. By reason of the elevations in the area involved, the lands of defendants are in progression of flow of water on a slightly lower level than those of the plaintiffs. In this light it appears that in case of the existence of more water than the creek was able to carry there would be an overflow which overflow would be controlled in direction

by the adjacent natural elevations in the absence of artificial barriers. In truth the real question of concern attaches to this matter of overflow and its consequences.

The course of overflow under the record in this case, as will become apparent, would be in part at least over and upon the lands of the defendants. The extent of course would depend upon the extent and quantity of overflow.

Thus narrowed the following is disclosed by the record: Prior to 1961 there was no interference with or obstruction of overflow of water within or in the vicinity of the lands involved here. In that year the defendants constructed a dike across the most of their land lying to the east of plaintiffs' land which dike generally followed the creek channel. The distance was not equal at all points but generally it was not far from the creek channel and from the east line of the plaintiffs' land. This dike had a general elevation above the creek and the plaintiffs' east line of about 5 or 6 feet.

The design of the dike was to protect all of the land of defendants lying east of the creek channel except the narrow strip between the dike and the lands of the plaintiffs, in case of overflow in the flood plain and to cause the overflow to pass to the south on the west side of the dike and to prevent it from flowing naturally upon the land area east of the dike.

As to this the plaintiffs say an additional effect of this, as is made clear by the evidence, is that the flood plain at its crossing of the line between the lands of the plaintiffs and the defendants at the dike is reduced and narrowed.

The defendants' response to this substantially is that although there was this obstruction of overflow in the flood plain no damage did or could result to the plaintiffs. They make contentions as to this among which are that there would be such rapidity of overflow that no damage would ensue, and in addition that the channel or, as it is denominated in the record, the borrow pit

created by the construction of the dike provided passage for the water which would have flowed normally in the flood plain in the absence of the dike.

As against this evidence of the defendants, the plaintiffs denied generally that there was no overflow damage to them after and because of the construction of the dike. Specifically they adduced evidence describing the topographical area of parts of their land all of which, before the dike was constructed, drained normally through the flood plain onto the lands of the defendants. There were 47 acres at the west edge and 13 acres toward the northeast corner which were used for raising of crops and between the 47 acres and the 13 acres there was an area of about 30 acres of pasture. This pasture land had an elevation slightly above the area to the east and the area to the west.

The evidence of plaintiffs as to both of the farmed areas is that in instances of heavy, intermittent, and frequent rainfall diversion caused by the dike would cause water to collect and damage crops thereon. With particular reference to the 47-acre area when the flow exceeded, as it did at times, the elevation of the pasture area, the water would flow over it and to the westward into farmed area where it would collect and pond in low spots without outlet until it disappeared by evaporation or seepage, the result of which was damage and destruction of the crops thereon.

The plaintiffs adduced evidence of incidents of overflow prior to the construction of the dike and of large quantities of water moving over onto the land of the defendants.

They also adduced evidence as to the effect of overflow on their lands after the construction of the dike and the benefits thereof flowing to the lands of the defendants. The effect of this was to indicate that the defendants were greatly benefited but that the plaintiffs were greatly damaged. There is no proof of any

particular amount of damage to plaintiffs or of benefit to the defendants.

What has been said makes it clear that the defendants here constructed a dike the purpose of which was to divert floodwaters to adjacent land. The waters diked against were floodwaters. They were from a stream which was accustomed to spill waters beyond its banks in times of high water and to flow over adjacent lands in its flood plain and to return to the stream at points farther downstream and thus were floodwaters and not diffused surface waters. See, Cooper v. Sanitary Dist. No. 1, 146 Neb. 412, 19 N. W. 2d 619; Mohatt v. Olson, 146 Neb. 764, 21 N. W. 2d 516; Mader v. Mettenbrink, 159 Neb. 118, 65 N. W. 2d 334; Frese v. Michalec, 148 Neb. 567, 28 N. W. 2d 197.

A riparian owner, as were the defendants, may not dam or dike against floodwaters to the injury of adjacent owners of land. See, Snyder v. Platte Valley Public Power & Irr. Dist., 144 Neb. 308, 13 N. W. 2d 160, 160 A. L. R. 1154; Cooper v. Sanitary Dist. No. 1, *supra;* Frese v. Michalec, *supra.*

This court must consider this case de novo and determine the question of whether or not the plaintiffs were damaged and injured by the diking of the defendants.

The defendants contend that this must be done without reference to any findings of the district court and de novo without reference to the fact that there may have been evidence to support the conclusion reached in the district court. In this connection it is pointed out that the district court heard the evidence, viewed the areas involved, and rendered its findings and judgment in the light of this.

In support of this contention the defendants cite section 25-1925, R. R. S. 1943; Toelle v. Pruess, 172 Neb. 239, 109 N. W. 2d 293; and Prauner v. Battle Creek Coop. Creamery, 173 Neb. 412, 113 N. W. 2d 518. These cases do not support the contention. The statutory provision supports only the proposition that the conclusion reached

by this court must be its own and based on the pleadings and evidence and not on the conclusion of the district court. Examination of the conclusion of the district court is not prohibited. The true rule is stated as follows in Hehnke v. Starr, 158 Neb. 575, 64 N. W. 2d 68: "The trial court is required to consider any competent and relevant facts revealed by a view of premises as evidence in the case, and a duty is imposed upon this court on review of findings made by the trial court to give consideration to the fact that the trial court did view the premises, providing that the record contains competent evidence to support the findings." See, also, Probert v. Grint, 148 Neb. 666, 28 N. W. 2d 548; Jack v. Teegarden, 151 Neb. 309, 37 N. W. 2d 387.

Returning now to the question of damage and injury to the plaintiffs, it is stated here that while the respective and relative elevations of the lands and what appears thereon find no accurate descriptions in the record, the general aspect relating thereto, except as to consequences, is reasonably clear. It may not well be said that there was not evidence of a potential for damage from and after the dike was constructed, and that there was evidence of actual damage during 1 year after the construction.

The most comprehensive evidence as to this is contained in the testimony of Raymond H. Reed, a consulting engineer, called as a witness by the defendants. This witness gave testimony of the depth of the borrow pit from which the dike was constructed as from 2 to 4 feet; that Shell Creek crosses the valley or what is referred to as the flood plain all of the way; that this would cause the plain to be narrowed; that the width of the plain would affect the speed of runoff; that the height of the dike affected the runoff; and that the dike would cause water to pile up but in runoff it probably would not affect the 13 acre tract of plaintiffs' land or the 47-acre tract. This testimony was elicited on direct

examination and the conclusions are based on opinion and not factual information related to flow.

On cross-examination and by opinion based on experience this witness in substance said that the area of a flood plain cannot be restricted and not adversely affect the rate of drainage, but the extent could not be stated except by specific study as to time and the amount of water involved; that no such study was made; that the flood plain to the east was reduced by approximately one-half; that the dike would prevent the floodwater from following the plain and would divert it so that none of it would be permitted to go to the east; and that standing water on growing crops could cause them to die.

In the light of this it becomes clear that approximately fifty percent of the water which came down the flood plain was diverted from the lands of the defendants to and upon the lands of the plaintiffs where the potential for damage and injury to the plaintiffs existed.

There is evidence in the record here that, in addition to the potential, damage and injury did ensue. It is true that there is an absence of proof as to the amount of damage but there is undisputable evidence of actual damage. The specific evidence of this is that of backward flow of floodwater over the pasture into the cultivated field to the west where it accumulated and ponded, the result of which was to destroy and damage growing crops of the plaintiffs. There was other evidence tending to prove damage but it does not require further mention in the light of this which appears to sufficiently support the contention that damage was proved by the plaintiffs.

In this case plaintiffs sought by their pleaded cause of action to obtain an injunction and a judgment for damages. A judgment for damages was denied, obviously for the reason that there was an absence of proof of any amount which they were entitled to recover. This action of the court was proper.

As to the request for injunction the defendants were

ordered to remove the dike or to lower its elevation in the manner specified in the judgment. The record sustains the judgment.

The judgment of the district court is therefore affirmed.

AFFIRMED.