HENRY ALT, APPELLEE, V. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLANT.

FILED SEPTEMBER 26, 1914. No. 17,799.

Waters: FLOOD WATERS: ACTION FOR DAMAGES: DIRECTION OF VERDICT. Action to recover damages alleged to have been sustained by the negligent construction of the defendant's railroad yards and grades, which it was claimed held back the flood waters of Salt creek and threw them over the plaintiff's premises and into his dwelling-house. It appearing from the evidence that when the flood reached. its maximum height the defendant's tracks and grades were entirely submerged, and the water formed a lake in the Salt creek basin of such depth as to stand three feet deep in plaintiff's dwelling, defendant's motion to direct a verdict in its favor should have been sustained.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. Reversed.

Byron Clark, Jesse L. Root, Strode & Beghtol and Barton L. Green, for appellant.

Wilmer B. Comstock, contra.

BARNES, J.

Action in the district court for Lancaster county to recover damages to plaintiff's real estate, consisting of lot B, block 1, of Mechanics addition to the city of Lincoln, and personal property situated thereon, alleged to have been sustained by damming up and displacing the waters of Salt and Middle creeks by the embankments and grades of the defendant railroad company.

The construction of defendant's railroad tracks and grades was not disputed. By defendant's answer it was alleged that on the 5th and 6th days of July, 1908, an unusual and excessive rainfall prevailed over that part of Lancaster and other counties drained by the waters of Salt creek, Middle creek, Oak creek, Little Salt creek, Stevens creek and Antelope creek, which converged into the Salt basin west of and adjoining the city of Lincoln, where plaintiff's property was situated, and caused a flood of excessive and unusual volume—one which ordinary prudence and suitable and proper railroad construction could not have prevented or avoided; that plaintiff's damages were caused thereby, and by the act of God, without any fault or negligence on the part of the defendant. Plaintiff's reply was in effect a general denial. On the issues thus joined plaintiff had the verdict and judgment, and the defendant has appealed.

It appears that plaintiff's property is situated in what is known as the Salt basin in the western edge of the city of Lincoln, and south of what is called defendant's J street grade. The record discloses that before the trial commenced the defendant made an application for a change of venue, alleging that a fair and impartial trial of the cause could not be had in Lancaster county on account of the fact that there was a large number of suits pending in the district court for said county growing out of the flood in question. It is not necessary to determine this contention, as the case must be disposed of on the question of the sufficiency of the evidence to sustain a verdict for the plaintiff.

At the conclusion of the plaintiff's evidence, and again when all of the evidence was introduced, the defendant requested the court to direct the jury to return a verdict in its favor. The requests were denied, and defendant duly excepted, and alleges error in overruling its motion. It also alleges that the evidence does not sustain the verdict, and these assignments will, for convenience, be considered together.

The evidence discloses that the greater part of the city of Lincoln lies east of Salt creek, which flows north and south through Lancaster county, and rises near the southwest corner of the county about 23 miles from the city of Lincoln, at an elevation of 1,500 feet above sea level. The head of Middle creek is four miles west of Pleasant Dale in Seward county, at an elevation of 1,500 feet. Oak creek heads at Brainard in Saunders county, at an elevation of 1,660 feet. The three streams converge in what is called the Salt creek basin in the valley at the western edge of the city of Lincoln, where the elevation is only 1,140 feet above sea level. In the last 11 miles above defendant's J street grade, Salt creek falls 70 feet, Middle creek falls 20 feet in the last 3 miles of its course; Oak creek has a fall of 420 feet, 40 feet of which is in the last 5 miles before it enters Salt creek. A short distance below the mouth of Oak creek, Antelope creek, with a total fall of 300 feet in 9 miles, empties into Salt creek, Little Salt creek, with a total fall of 410 feet, and a fall of 70 feet in the last 7 miles of its course, empties into Salt creek, and Stevens creek, also a considerable stream, joins Salt creek below the mouth of Antelope creek, while the fall of Salt creek northward from the city of Lincoln is only about 8 feet in 12 miles of its course.

It appears that on the 5th and 6th days of July, 1908, a heavy rainstorm raged over the 681 square miles of area above referred to, unusual in its extent and intensity. At Palmyra, in Otoe county, southeast of Lincoln, 4.8 inches of rain fell in 24 hours. During the same period of time, at Crete, 2.81 inches of rain fell. At the same time 5.13 inches of rain fell on the campus of the University in the city of Lincoln. At Woodlawn on Oak creek, 5 miles from Lincoln, on the morning of July 6, the 6-inch rain guage was found to be running over. Eight miles west of Lincoln on Middle creek 8 inches of rain fell during this storm. When the rain began falling the ground was already saturated with water, and the result of this unprecedented rainfall is described by the witnesses in part as follows:

One Dwyer, a farmer living in the Salt creek valley, just north of the mouth of Antelope creek, testified that he noticed the high water at daylight on the morning of July 6; that Little Salt creek enters the larger stream some two miles north of his residence. At daylight the water was backing up from the north, and so continued for about two hours, until two different waves three feet and four feet high, respectively, came down Salt creek. The witness and his family escaped by swimming and pushing a mattress upon which his wife and children had taken refuge, for his horses were drowned in attempting to cross his cornfield. The witness testified that he was five feet and ten inches in height, and that he could only just touch bottom in his cornfield. This condition existed about two miles north of the defendant's embankment and grades.

Henry Pennaker testified, in substance, that he lived at 431 First street, just north of defendant's J street grade; that at 6 o'clock on the morning of July 6, 1908, the water was near the top of the grade upon the south side; that it went over the grade at about half past 6 o'clock, and in 15 or 20 minutes it filled up the basin north of the grade, and from that time the water was all over the tracks both north and south, and was over the J street grade.

John Reger testified, in substance, that for a time the water was higher on the south side of the J street grade than it was on the north side, but he could not tell how much higher it was.

H. G. Helger testified that when he first saw the water it was higher on the south side of the track than it was on the north side, but it soon got to be the same height on both sides of the grade, and was from 9 to 12 feet deep.

Philip Schmill testified that the water came over the grade between 8 and 9 o'clock on the morning of the 6th of July, and in two hours it was as high on the north side as it was on the south side of the grade, and the water did not commence to recede until the middle of the afternoon.

Jacob Groth testified that the water first ran to the north until about 10 o'clock, when the current ran back.

to the south, and at about 5 o'clock in the afternoon it again ran to the north.

John Styles stated, among other things, that when the water was the highest it was all over the Middle creek valley, and extended up that creek as far as one could see.

R. M. Phillips testified that at 11 o'clock the water was all over the valley as far as he could see. There was nothing but water all over the grades. The water in Salt creek started to back up when the flood came down Middle creek.

Henry Wuester testified that the water first came over the J street grade at about half past 8 o'clock in the morning; that when it commenced to flow over the grade it was about three feet higher on the south side than it was on the north side. This witness also stated that he testified in the Albers case that in 15 or 20 minutes the water was the same height on both sides of the grade.

The plaintiff's property, as above stated, was situated on the south side of the J street grade, and it must be conceded that according to the testimony of some of the witnesses, when the flood first came down Salt creek, for a short time the Denver grade and the J street grade held back the water and threw it upon the plaintiff's premises; but, when the flood came down Middle creek and the other tributaries of Salt creek, the Salt basin was completely filled up, and defendant's grades and tracks were submerged, and the whole country west of the main part of the city of Lincoln was a vast sea of water which stood in plaintiff's house for several hours before it commenced to recede. It was therefore established beyond dispute that the flood was so great that plaintiff's damages could not be charged to the defendant's construction of its tracks or grades, and plaintiff's injuries would have occurred if the defendant's tracks and grades had not been constructed in the Salt creek valley. It is impossible to see how any unprejudiced mind could have consented to a verdict for the plaintiff.

It was not alleged that any particular part of plaintiff's damages was caused by the flood waters of Salt creek

which were at first obstructed by defendant's Denver and J street grades, and there was no separate count in the plaintiff's petition for damages occurring before the main flood covered his property. It was conclusively shown that when the flood was at its height all of the defendant's grades were covered, and most of the damage to plaintiff's property was then sustained.

As we view the evidence, it was wholly insufficient to sustain the verdict. Many other errors are assigned by defendant, but it is unnecessary to consider them.

For the foregoing reasons, the judgment of the district court is reversed and the cause is remanded for further proceedings.

REVERSED.

REESE, C. J., and ROSE and FAWCETT, JJ., not sitting.