FRED HOFELDT, APPELLEE, V. ELKHORN VALLEY DRAINAGE
DISTRICT, APPELLANT.

FILED APRIL 26, 1927. No. 25605.

1. **Waters: RIPARIAN OWNERS.** A riparian owner may not, for his own convenience and benefit, embank against the ordinary overflow of a running stream, when the effect is to cause an increased volume of water on the land of another riparian owner to his injury, and, if he does so, he is answerable in damages.
2. **Instructions** examined, and *held* not prejudicial.
3. **Evidence** examined, and *held* sufficient to support the verdict and judgment.

APPEAL from the district court for Douglas county: ARTHUR C. WAKELEY, JUDGE. *Affirmed.*

*Courtright, Sidner, Lee & Gunderson,* for appellant.

*Saxton & Hammes, contra.*

Heard before GOSS, C. J., ROSE, DAY, GOOD, THOMPSON and EBERLY, JJ.

DAY, J.

This action was brought by Fred Hofeldt, hereinafter designated plaintiff, against the Ekhorn Valley Drainage District, hereinafter called defendant, to recover damages claimed to have been sustained by plaintiff by reason of the construction of a dike by defendant along the bank of the Platte river which caused a deflection of the current of the river over and against the plaintiff's land, causing the loss of several acres by erosion and damaging his meadow and growing alfalfa by overflowing the same. The trial resulted in a verdict and judgment in favor of the plaintiff for $898.75. Defendant appeals.

The plaintiff's cause of action is predicated on the theory that the defendant had no lawful right to construct the dike and thus interfere with the natural course of the running waters of the river without making provision for the protection of his lands from the extra burden cast thereon

by reason of the dike. He also charged that defendant made a futile attempt to build some retards to protect his land from erosion, but they were so inadequate that, in reality, the retards tended to increase rather than decrease the erosion. The acts and omissions on the part of the defendant are characterized as negligence.

It was the contention of the defendant that it had the legal right to construct the dike to protect its own lands and was under no obligation to protect plaintiff's land from any increased burden which the construction of the dike might produce. Upon this phase of the case, defendant contends that the waters, against which it sought to protect itself by the construction of the dike, were surface waters and its acts were fully justified by the surface-water rule. On the other hand, the plaintiff claims that the overflow waters were still the waters of the river and the running-water rule should be applied.

The record shows that defendant is a drainage district corporation organized and existing under the laws of the state, relating to drainage districts, and comprising within its boundaries about 55,000 acres of land. These lands are located in the western part of Douglas and the northwestern part of Sarpy counties. The plaintiff's land is within this district.

For the purpose of a clearer understanding of the discussion, we have attached a map showing the relative location of the river, the artificial constructions, the plaintiff's land, and other matters referred to in this opinion. This plat does not include all of the district and is intended only to illustrate the discussion.

The general course of the Platte river, as it flows across the state, is in an easterly direction, but for a number of miles at and near the places in controversy it flows north and south. It forms the west boundary of Douglas and Sarpy counties. Generally speaking, it has a wide valley on either side, and flows through a flat and comparatively

Hofeldt v. Elkhorn Valley Drainage District.

level territory, and at the points in controversy it is over half a mile in width. Its banks are very low.

The plaintiff is the owner of all of section 17, township 14 north, range 10 east, in Sarpy county, lying east of the Platte river and designated on the map "Hofeldt." His land is bounded on the north by the line separating Douglas and Sarpy counties, and in 1922 contained 244.11 acres.

The record shows that in 1919, as a part of its general improvements, defendant built a dike extending along the east bank of the Platte river from point A, designated on the map, northward for a distance of about 15 miles. The dike was built on defendant's land 200 to 300 feet from the river bank and was approximately 8 feet high. At the point A, the dike connected with a natural sand ridge, which paralleled the river bank for a distance of about one mile to the point B, where it connected with a dike constructed by the railroad company extending along the river bank for about a mile, terminating at the point C. The natural sand ridge and the dike constructed by the railroad company became a part of defendant's improvements. At the time of the construction of the dike, defendant made no improvement south of point C. Prior to the construction of the dike, generally speaking, the channel of the river opposite plaintiff's land was in the center or near the west bank. While the river formed the west boundary of plaintiff's land, the current at that point ran parallel with his land and caused but little erosion.

The testimony on behalf of plaintiff tends to show that, before the construction of the dike by defendant, in time of high water, the river would spread out over a broad expanse of about two miles at and above point A; that the flood waters would flow south and east, some of it returning to the original channel above plaintiff's land; that the overflow waters occasioned little damages to the plaintiff's crop and scarcely any to the land. The overflow periods occurred about once a year. An engineer testified

that after the construction of the dike, following a high-water period, it diverted the current, causing it to strike the opposite bank and rebound to plaintiff's land, striking it at an abrupt angle. He also testified that the construction of the dike narrowed and changed the channel, increased the velocity of the waters and greatly increased the erosion of plaintiff's land. The plaintiff testified that in 1921 he complained to defendant that his land was being washed away and requested it to take some action to protect him. Thereupon defendant caused three short ripraps to be placed about 200 feet apart toward the south end of his land. These ripraps soon sank. Again plaintiff made complaint to defendant, and it then put in 16 steel deflectors, widely separated, along the plaintiff's mile frontage. The same engineer testified that the work done by defendant was wholly insufficient, from an engineering standpoint, to protect plaintiff's land from erosion by the river; that the ripraps and steel constructions caused an island to be formed at point F which caused a strong current between the island and plaintiff's land, and that the work done by defendant, in fact, did more harm than good. Plaintiff's evidence tended to show that, prior to the construction of the dike, the river never inundated his land so as to injure his meadow or growing alfalfa, but thereafter the flood waters deposited sand and debris several inches deep over about 30 acres of his land.

On behalf of defendant, it was shown that prior to the construction of the dike, someone, other than defendant, had constructed a dike on the opposite side of the river from plaintiff's land and extending for more than a mile north of it. This dike is indicated by the red line I-J. About 1922 some one, not the defendant, built a brush retard at the point K in the river and, immediately below these, accretions formed. Some witnesses testified that the effect of these brush retards was to divert the waters directly across the river to the plaintiff's land.

The record shows that, within four years from the beginning of the action, about ten acres of plaintiff's land had been washed away and his meadow and alfalfa badly injured by the overflow.  Under this state of the record, defendant insists that the court erred in not directing a verdict in its favor as requested.  Whether the diversion of the water onto plaintiff's land was caused by the construction of defendant's dike or the brush retards, as claimed by defendant, at the point K, or by other obstructions in the river was, we think, under all the evidence, a question for the jury's determination.

The plaintiff's brief seems to present two theories: First, that defendant had no right to build the dike in such a manner as to divert the waters from its natural channel onto his land; and, second, having built the dike, it was negligence in not taking reasonable precautions to prevent the waters from encroaching on his land.

One of the questions presented by the record, and perhaps the main one, is whether the owner of land, so situated upon a natural stream of water that in time of flood it is overflowed, may for his own protection construct a dike, the natural and probable consequences of which must be, in time of ordinary floods, to cause the overflow to erode and damage the land of other riparian owners.  There is a lack of uniformity in the holdings of the courts on this question.  Some courts consider the overflow waters as surface water, against which an owner may protect himself by embankment, regardless of the effect it may have on his neighbor's lands.  Other courts regard the overflow waters of running streams as a part of the stream and governed by the running-water rule.

In Gould, Waters (3d ed.) sec. 264, the rule is stated: "A stream does not cease to be a water-course and become mere surface water because at a certain point it spreads over a level meadow several rods in width, and flows for a distance without defined banks before flowing again in a definite channel."

In 3 Farnham, Waters and Water Rights, sec. 880, the author says: "To determine how far flood water in a river may be fought as a common enemy the form which the water assumes must be taken into consideration, and the facts of each case dealt with by themselves. Every stream flowing through a country subject to a changeable climate must have periods of high and low water. And it must have, not only its ordinary channel which carries the water in ordinary times, but it must have, also, its flood channel to accommodate the water when additional quantities find their way into the stream. The flood channel of the stream is as much a natural part of it as is the ordinary channel. It is provided by nature, and it is necessary to the safe discharge of the volume of water. With this flood channel no one is permitted to interfere to the injury of other riparian owners."

The dike constructed by defendant was from 200 to 300 feet distant from the ordinary channel, but obstructed the water before it reached the flood channel. The principles announced by the text-writers above quoted have been recognized in *Chicago, B. & Q. R. Co. v. Emmert,* 53 Neb. 237; *Brinegar v. Copass,* 77 Neb. 241; *Murphy v. Chicago, B. & Q. R. Co.,* 101 Neb. 73. In the latter case, in the course of the argument, it was said: "The basic principle which should determine the character of these waters seems to the writer to be the ancient maxim, '*Aqua currit et debet currere u: currere solebat.*' Water runs and ought to run as it has used to run. Each owner of lands bordering upon either the normal or flood channels of a running stream is entitled to have its waters, whether within its banks or in its flood channels, run as it has used to run, and no one has the right to interfere with its accustomed flow to the damage of another." In *Keck v. Venghause,* 127 Ia. 529, it was held: "A riparian owner cannot lawfully embank against the natural overflow of an inland stream where the same will cause an increased volume of water to flow upon the land of another to his injury." See, also, *Craw-*

*ford v. Rambo,* 44 Ohio St., 279; 27 R. C. L. 1064, sec. 5, and 1099, sec. 35.

In *McKee v. Nebraska Gas & Electric Co.,* 110 Neb. 137, it was held: "A riparian owner, who by his wilful act diverts the waters of a natural stream from its accustomed channel and causes them to flow upon the lands of his neighbor, is liable for the resulting damages, irrespective of any question of negligence or malice. It is sufficient in such case if plaintiff prove that the act was wrongfully done and that he was damaged thereby." In that case, in the course of the discussion, it was said: "Defendant changed the course of the river in such a manner that, whereas it flowed past plaintiff's land from north to south, when changed, it flowed east and west directly against plaintiff's west bank and at right angles thereto, the course of the river was greatly shortened, thereby accelerating the flow of the water, and the undisputed evidence shows that this caused the banks to wash away and the land to overflow. The court was therefore right in instructing the jury that the act of the defendant caused the damage, if any." For other cases bearing on the question see, *Bunting v. Oak Creek Drainage District,* 99 Neb. 843; *Miller v. Drainage District,* 112 Neb. 206; *Buchanan v. Seim,* 104 Neb. 444.

We think our decisions have committed us to the doctrine that a riparian owner may not embank against the overflow of running streams when the effect is to cause an increased volume of water on the land of another riparian owner to his injury, and if he does so he is answerable in damages.

Defendant complains of the giving of instructions 10 and 11 by the court. These instructions, standing alone, are subject to some criticism, but considered in connection with the entire instructions and the record, we have become convinced that the jury were not misled. Other errors have been assigned, which we have considered, but do not regard as prejudicial to the defendant. Upon considera-

tion of the entire record, we find no prejudicial error; and the judgment of the district court is therefore .

AFFIRMED.

GOOD, J., dissenting.

I concur in the view expressed that instructions 10 and 11 are subject to criticism, but do not concur in the view that they were not prejudicial to the defendant. In my view, the instructions informed the jury that defendant owed a duty, which the law does not impose, and thereby permitted the jury to consider acts as negligence which were not, in fact, negligence, because no duty was imposed by law to maintain the dikes or other improvements. Since there was no duty imposed, there could be no negligence in failing to maintain the dikes or other improvements. As I view the matter, these instructions were prejudicial to the defendant and perhaps caused the jury to enter a verdict for the plaintiff when, but for such instructions, the verdict might have been for the defendant.