LEO B. GOODHART, APPELLANT, V. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLEE.

19 N. W. 2d 549

FILED JUNE 29, 1945. No. 31919.

*Archibald J. Weaver* and *F. A. Hebenstreit*, for appellant.

*Jean B. Cain, J. W. Weingarten* and *W. P. Loomis*, for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, CHAPPELL, and WENKE, JJ.

PAINE, J.

This is an action against the Chicago, Burlington & Quincy Railroad Company for damages for the destruction of growing crops by floodwaters which were caused to back up on the plaintiff's land because of the alleged improper construction of a culvert under the railroad track. At the close of all of the evidence, the trial court instructed the jury to return a verdict for the defendant. Plaintiff appeals.

Plaintiff is the owner of a tract of bottom land in Richardson county, on the south line of which there is a county highway running east and west, and a quarter of a mile south of this highway, and across the land of another, is the right of way of the defendant railroad company. Just to the south of such right of way, and parallel therewith, is the drainage canal of Drainage District No. 2, Richardson county. Part of plaintiff's land is drained by a small watercourse which rises not far from the northwest corner of plaintiff's farm and angles in a southeasterly direction across such farm, going under the county road and then continuing on for about a quarter of a mile across the inter-

vening land to the defendant's right of way and across that right of way in a concrete culvert.

This little watercourse originally ran under an open trestle under the railroad track, and by natural processes it had eroded until it had a considerable depth under the open trestle, which had to be replaced, for it impaired the safety of the tracks. In the year 1916 the defendant company constructed the present culvert of concrete with reinforced steel bars, which provides a waterway 12 feet wide, 10 feet high, and 61 feet long. The highest part of the floor of this culvert is at the north edge, from which point it slopes downward over three feet to the south side of the culvert. The north edge, which is the highest part of the culvert, is over six feet lower than the south edge of the plaintiff's land and ten feet lower than the upper reaches of the watercourse. This entire drainage course is about 4,500 feet in length to where it empties into another waterway.

One of the charges of the plaintiff is that this filling up of this eroded watercourse made an obstruction therein, which prevented the water running off in its natural course and caused it to back up on the plaintiff's land, causing the loss of his crop in the year 1940, for which this action was brought. The plaintiff charges that the defendant does not have the right to raise the eroded level of that watercourse, but that the plaintiff has the right to the natural erosion and deepening of such watercourse back toward his land, and that this culvert deprives him of rights which he possessed.

The defendant answers that the plaintiff is precluded from a recovery for the reason that the level of the water which damaged his crop was about ten feet higher than the floor of the concrete culvert under the right of way, which culvert was at least a quarter of a mile away from any of the plaintiff's land, and that obstructions in that quarter of a mile, which held the water from running down to the culvert, were not under the control of the Burlington railroad, but were under the control of the county authorities, which

built and maintained the county highway on the south side of the plaintiff's land, and that the ditch in which this small watercourse ran could not carry half as much water as could have gone under the culvert on the right of way; that the bridge across the watercourse at the county road had only 25 per cent of the capacity of the railroad culvert, and there was a hump about one foot high in the flow line, over which the water must go in crossing the intervening land, which could not be controlled by the defendant railroad in any way, as it was not responsible for the construction of this ditch. All witnesses agreed that the railroad culvert did allow all the water to pass which came to it.

The defendant claims that under section 31-359, R. S. 1943, which section has been in force since 1905, Mr. Linn, the previous owner of both tracts, could have proceeded under this statute for the construction of a deeper ditch, but instead in about 1914 he elected to improve the surface drainage of what is now the plaintiff's land by laying a line of 12-inch outlet tile in the drainage course across what is now the Bruun land, and laid lines of lateral tile every 80 feet to this outlet tile, and in 1930 refused to permit the drainage course to be deepened to disturb his main tile line. In 1916 Mr. Linn withdrew any objection to the construction of defendant's new culvert when he learned there was a fall of 15½ inches from the end of his outlet tile to the end of the culvert.

Exhibit No. 9 is a release, filed for record May 12, 1910, in which it describes the payment of $10,890.27 by the Chicago, Burlington & Quincy Railroad Company on account of Drainage District No. 2, which runs parallel with the Burlington right of way and immediately south thereof, and this release is signed by the chairman and by C. M. Linn, secretary for Drainage District No. 2, together with the signatures of many landowners, all signed before a notary public, and which agreed that for the payment of said sum of money it would be accepted in full satisfaction of all claims for damages to crops growing upon said lands, whether caused by the railroad grades or embankments, and

from all liability or damages on account of water, and they each bound themselves, their tenants, their assigns and grantees, so long as the present capacity of the waterways is not decreased by repair or reconstruction and the right of way is not changed so as to increase the present obstruction to the natural flow of water. This release was signed by Linn and his wife individually to cover the land now owned by the plaintiff and the intervening land now owned by Bruun.

The evidence of the engineers of the defendant company shows that the present concrete culvert under the railroad track is in strict accordance with the terms of the release mentioned. It is also shown that said Linn, now deceased, was still the owner of both tracts of land in 1916, when the old trestle bridge was replaced by the new concrete culvert, and that said Linn acquiesced in and consented to the construction of said culvert in the year 1916.

In the motion of defendant for a directed verdict it was claimed that the evidence was insufficient to sustain a verdict in the plaintiff's favor; that there was no substantial evidence that any act of the defendant contributed to the crop damage which the plaintiff sustained in 1940, which was doubtless caused by the inefficiency of the ditch beginning on plaintiff's own land, and over which defendant had no control.

The evidence shows that the concrete culvert was adequate and sufficient to pass all water that came to it; that the release executed by C. M. Linn, releasing the defendant from liability for damages to crop, is binding upon the plaintiff as a successor in the chain of title; that the construction of the defendant's culvert was designed to and did prevent the erosion of the defendant's right of way, but invaded no right of the plaintiff or his predecessors, as plaintiff had no right to require defendant's right of way to be eroded under the roadbed.

The trial court, in instructing the jury to return a verdict for the defendant, stated that the evidence was insufficient to sustain a recovery; that the floor of the culvert was rea-

sonably lower than the plaintiff's land, and it was not an obstruction, for the opening was left large enough to take off all the water which came to it; and the jury were instructed to return a verdict for the defendant.

The decision of this court in *Johnk v. Union P. R. Co.*, 99 Neb. 763, 157 N. W. 918, sustains the right of the defendant railroad company to protect its own land in the matter of guarding against dangerous erosion under the old trestle bridge.

"In an action for damages to land and growing crops by floodwaters of a stream, subject to overflow from natural causes, and which it is alleged were thrown upon the plaintiffs' land by the negligent and improper construction of a railroad nearby and adjacent thereto, the burden of proof is on the plaintiffs to show that the construction complained of either caused such overflow or increased the same, or in some manner contributed thereto, together with the nature and extent of the increased overflow, if any, and the amount of damages caused thereby." *Harris v. Lincoln & N. W. R. Co.*, 91 Neb. 755, 137 N. W. 865. See, also, *Alt v. Chicago, B. & Q. R. Co.*, 96 Neb. 714, 148 N. W. 900.

The evidence is undisputed that the waters which stood on plaintiff's land and caused his serious damages were not in any way backed up by the railroad culvert, for the floodwaters standing on plaintiff's land were approximately at a level ten feet above the north edge of the culvert.

The undisputed evidence shows that the obstructions to the free flowage of the water which were on intervening land between plaintiff's south line and the north line of the defendant's right of way were caused by others, and for which defendant could not be held responsible.

This court has said in a recent case: "It is the duty of those who build structures across natural drainways to provide for the natural passage through such obstructions of all waters which may be reasonably anticipated to drain there, and this is a continuing duty." *Webb v. Platte Valley Public Power and Irrigation District*, ante, p. 61, 18 N. W. 2d 563.

We believe that this obligation and duty was met by the defendant in the construction of the present concrete culvert.

It is true, as plaintiff insists, that "In reviewing an instruction to the jury to return a verdict for defendant at the close of all the evidence, the appellate court will assume the existence of all material facts which competent evidence on behalf of the plaintiff establishes or tends to prove, and also give him all proper and logical inferences from such facts." *Franks v. Jirdon*, 144 Neb. 693, 14 N. W. 2d 372.

"In a jury case where different minds may draw different conclusions or inferences from the adduced evidence, or if there is a conflict in the evidence, the matter at issue must be submitted to the jury, but where the evidence is undisputed, or but one reasonable inference or conclusion can be drawn from the evidence, the question is of law for the court. *Craig v. Chicago, St. P., M. & O. R. Co.*, 97 Neb. 426, 150 N. W. 374; *Hickey v. Omaha & C. B. Street R. Co.*, 140 Neb. 665, 1 N. W. (2d) 304." *Fulcher v. Ike*, 142 Neb. 418, 6 N. W. 2d 610.

"Where the evidence was insufficient to sustain a judgment in favor of the plaintiff, who was injured in a collision while driving his automobile, it was the duty of the trial court to sustain a motion directing a verdict for defendant at the close of plaintiff's evidence." *Redwelski v. Omaha & C. B. Street R. Co.*, 137 Neb. 681, 290 N. W. 904. See, also, *Smith v. Epstein Realty Co.*, 133 Neb. 842, 277 N. W. 427.

In our opinion, there was no prejudicial error made by the trial court in instructing the jury to return a verdict for the defendant, and the judgment is hereby affirmed.

AFFIRMED.