EMMA STOLTING ET AL., APPELLEES, V. ARTHUR EVERETT ET AL., APPELLANTS, IMPLEADED WITH ANTHON F. STOLTING, APPELLEE.

51 N. W. 2d 603

Filed February 8, 1952. No. 33079.

*Albert L. Detmer, Denney & Denney, J. W. Weingarten,* and *W. P. Loomis,* for appellants.

*Hubka & Hubka* and *George A. Skultety,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This action was commenced in the district court for Jefferson County to recover damages for injury done to the plaintiffs' lands by the floodwaters of the Little Blue River. As a basis for the action the plaintiffs claim that the damage to their lands was caused by the careless, negligent, and wrongful construction, reconstruction, and maintenance of jetties and a dike by the defendants which prevented the floodwaters of the Little Blue River from flowing in its natural flood channel

but caused it to flow over their lands in such manner as to wash away the top soil thereof and cut a new channel across it. The jury found for plaintiffs and assessed the amount of damages in the sum of $6,500 and rendered verdict accordingly. Defendants filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The court overruled this alternative motion and rendered judgment on the verdict. It is from the overruling of the alternative motion and rendering of the judgment that this appeal was taken.

Appellees, including the defendant Anthon F. Stolting, are the heirs of Henry Stolting, deceased, and the owners of the damaged land. We will refer to this land as the Stolting lands. Appellants are Arthur and Mary Everett and the Chicago, Burlington & Quincy Railroad Company. In this opinion, when it is necessary to refer to the appellants severally, we will refer to them respectively as the Everetts and the Railroad, and to the lands owned by the Everetts as the Everett lands.

It is the appellants' primary contention that the evidence adduced is not sufficient to sustain the jury's finding that what they did caused the damage to the Stolting lands and therefore the trial court erred in not sustaining either their motion for a directed verdict or, after verdict, their motion for judgment notwithstanding the verdict.

The rules applicable are as follows:

"In every case, before the evidence is submitted to the jury, there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed." Krichau v. Chicago, B. & Q. R. R. Co., 150 Neb. 498, 34 N. W. 2d 899.

"Where the evidence was insufficient to sustain a judgment in favor of the plaintiff, it was the duty of the trial court to sustain a motion directing a verdict for de-

fendant at the close of plaintiff's evidence." Goodhart v. Chicago, B. & Q. R. R. Co., 146 Neb. 290, 19 N. W. 2d 549.

"If a motion for directed verdict made at the close of the evidence in a case should have been sustained for want of evidence to support a verdict in favor of the party against whom made, it is the duty of the court on motion for judgment notwithstanding the verdict timely made to sustain such motion to set aside the verdict and to render judgment pursuant to the motion for directed verdict." Hamilton v. Omaha & C. B. St. Ry. Co., 152 Neb. 328, 41 N. W. 2d 139.

"In testing the sufficiency of evidence to support a verdict it must be considered in the light most favorable to the successful party, that is, every controverted fact must be resolved in his favor and he should have the benefit of every inference that can reasonably be deduced therefrom." Smith v. Platte Valley Public Power & Irrigation Dist., 151 Neb. 49, 36 N. W. 2d 478.

"This court will not disturb the findings of a jury unless on an examination of the record it may be said that such findings are not supported by any evidence or are clearly wrong." Keyser v. Allen, 149 Neb. 449, 31 N. W. 2d 309.

The lands herein involved lie in the flood plane of the Little Blue River as its winding course passes through the south half of Section 5, Township 1 North, Range 3 East of the 6th P. M., in Jefferson County, Nebraska, which is just west and a little south of Endicott. The flood plane of the Little Blue is generally about a half to three-quarters of a mile wide. The right-of-way, grade, and tracks of the Railroad also pass through the south half of Section 5. The right-of-way is 100 feet wide and runs generally in an east to west direction although slightly to the southwest. When it reaches the northeast corner of the southeast quarter of the southwest quarter of the section the turn to the southwest increases. It passes out of the section at about the southwest corner thereof. It crosses

the Little Blue at more or less of a right angle at a point near the west edge of the southeast quarter of the southwest quarter of the section. The grade of the railroad roadbed is about 10 to 11 feet above the general level of the flood plane. That part of the Everett lands herein involved is their land lying in the flood plane of the Little Blue just north of and adjacent to the right-of-way and immediately east of and adjacent to the Little Blue as it turns south in its course to pass under the main bridge. That part of the Stolting lands herein involved is their land lying just south of the right-of-way and more or less within a horseshoe bend of the Little Blue. It is, for all practical purposes, located in the southeast quarter of Section 5 and consists of 64.46 acres of which 50 acres were subject to cultivation. It is this 50-acre tract that was damaged. The remainder of the tract, or 14.46 acres, is covered with trees and lies adjacent to and immediately south of the right-of-way. The Railroad owns approximately 13 acres in this flood plane besides its right-of-way. This land lies in the north part of the southeast quarter of the southwest quarter of the section. It is north of the Little Blue and adjacent to the Everett lands which lie immediately to the north. It is divided by the right-of-way.

Located in the right-of-way in the area herein involved are three bridges. The first is the main bridge over the Little Blue which, with a trestle adjacent thereto on the east, is 668 feet long. East thereof some 1.600 feet is a 200-foot bridge referred to as the middle bridge. It has an opening under it varying from 4 to 8 feet in depth. East of the middle bridge some 1,300 feet is the Smith bridge. This bridge is 240 feet long and the opening under it varies from 4 to 13 feet in depth. It is over a natural stream called Smith Creek. The middle and Smith bridges are located in the right-of-way in an area where it lies between the Everett and Stolting lands.

Commencing in December 1947 the Railroad, in conjunction with the Everetts, commenced putting jetties

along the east bank of the Little Blue and dikes on the east bank thereof at the furthest east point in the bend of the river where, coming from the west, it turns south to pass under the main bridge. This was done for the purpose of preventing the river from cutting further to the east in the Everett lands and to prevent it from forming a new channel across the Everett lands in a line approximately through the middle bridge and from there across the Stolting lands and terminating in the present main channel of the river at a point about where Smith Creek now enters it. This work was continued until, in June 1950, it included a completed dike some 5 to 6 feet in height and some 1,450 feet in length. This dike extended from the east end of the trestle adjacent to the main bridge north and slightly to the west completely across the flood plane of the Little Blue north of the right-of-way.

During the six-day period extending from July 9 to 14, 1950, inclusive, the river was in flood stage. It did not reach the height of the 1941 flood but did completely cover the river's flood plane. The dike herein referred to as having been completed in June 1950 completely, except for a very small and insignificant trickle around the north end thereof, prevented any of the floodwaters of the river from flowing east across the Everett lands in the river's flood plane lying north of the right-of-way and then through the middle and Smith bridges. It had the effect of forcing all of the waters flowing in the valley of the Little Blue to flow under the main bridge and trestle adjacent thereto, and then into the main channel and that part of its flood plane which is south of the right-of-way and just east of the main bridge. During this flood the waters flowing across the Stolting 50-acre tract cut a new main channel across it and also severely washed and eroded, or covered with gravel and sand, the other parts thereof.

The 50 acres of the Stolting lands so damaged were of a rich sandy loam and in a good state of cultivation. The

evidence fully supports that it was damaged in the amount fixed by the jury.

Appellants' interference with the natural flow of the floodwaters of the river was subject to the following:

"We think our decisions have committed us to the doctrine that a riparian owner may not embank against the overflow of running streams when the effect is to cause an increased volume of water on the land of another riparian owner to his injury, and if he does so he is answerable in damages." Hofeldt v. Elkhorn Valley Drainage Dist., 115 Neb. 539, 213 N. W. 832, 53 A. L. R. 1174.

"A riparian owner may not dam or dike against such flood waters to the injury of adjacent owners of lands or crops growing thereon." Frese v. Michalec, 148 Neb. 567, 28 N. W. 2d 197.

"The owners or proprietors of lands bordering upon either the normal or flood channels of a natural watercourse are entitled to have its water, whether within its banks or in its flood channel, run as it is wont to run according to natural drainage, and no one has the lawful right by diversions or obstructions to interfere with its accustomed flow to the damage of another." Stocker v. Wells, 150 Neb. 51, 33 N. W. 2d 445.

It was, of course, incumbent upon the appellees to sustain the burden of establishing that the dike was the cause of their damage and the extent thereof. As stated in Goodhart v. Chicago, B. & Q. R. R. Co., *supra:* " 'In an action for damages to land and growing crops by floodwaters of a stream, subject to overflow from natural causes, and which it is alleged were thrown upon the plaintiffs' land by the negligent and improper construction of a railroad nearby and adjacent thereto, the burden of proof is on the plaintiffs to show that the construction complained of either caused such overflow or increased the same, or in some manner contributed thereto, together with the nature and extent of the increased overflow, if any, and the amount of damages

caused thereby.' Harris v. Lincoln & N. W. R. Co., 91 Neb. 755, 137 N. W. 865. See, also, Alt v. Chicago, B. & Q. R. Co., 96 Neb. 714, 148 N. W. 900.''

From the evidence adduced the jury could have found that the Everett lands north of the right-of-way and east of the river had always been in the river's flood plane; that since 1902 floodwaters of the river had flowed east and a little south across this land to pass under the middle and Smith bridges; that this part of the river's flood plane carried up to 50 percent of the floodwaters of the river not flowing in the main stream; that the dike completely, for all practical purposes, prevented floodwaters from flowing east across the Everett lands north of the right-of-way; that the dike materially increased the amount of water flowing under the main bridge and trestle adjacent thereto; that because of this increased volume the speed of the water flowing under the main bridge was greatly increased giving it a much greater cutting and washing power than it had ever had before as evidenced by its cutting a deeper channel under the main bridge, by its cutting of the high bank and washing out large trees in the south bank of the river as it turned east some 400 feet south of the main bridge, by its cutting away a substantial area of the north point of a peninsula west of where Rose Creek enters the river and its washing away many trees located thereon, and by its cutting the bank and washing out many trees on the Stolting land on the north bank of the river east of the mouth of Rose Creek; that the increased volume of water with its increased flow passed through the very narrow flood channel of the river between the mouth of Rose Creek and the right-of-way as it approached the Stolting land in the horseshoe bend some 40 rods to the east; that this increased volume and speed gave it cutting and washing power greater than it had ever had before; that as it approached and traveled onto and over the Stolting land it was not met by floodwaters coming through the middle bridge,

as had always been the situation before, but flowed on to the east and north without interference; that in fact the floodwaters flowed north through the middle bridge instead of south as it had always been wont to do; and that this increased flow of water hit the west edge of this 50-acre tract of land with a velocity which gave it a much greater cutting and washing power than it had ever had before and, being uninterfered with from floodwaters coming south through the middle bridge, caused all the damage for which recovery is here sought.

In this respect it should be stated that while this 50-acre tract has always been in the flood plane of the river and subject to overflow it had never, prior to the construction of the dike, been seriously damaged thereby, including the flood in 1941 which it appears was the highest flood of which there is a record.

We have not overlooked the fact that appellants offered evidence of witnesses who were of the opinion that numerous other factors, such as the flow of the floodwaters of Rose Creek entering the Little Blue at right angles not too far upstream from this tract, the cleaning out of the underpass and straightening of the river's approach to the Stanley bridge some 50 rods east of the east line of Section 5, the obstructions in the old channel of the horseshoe bend, the damming of a cutoff from Rose Creek to the old river channel in the horseshoe bend, and the low area across the 50-acre tract, caused the damage. This testimony only presented a question of fact for the jury.

In this respect it is appellants' thought that the evidence of their two experts was conclusive on this factual issue as a matter of law. While it was a subject to which expert testimony was relevant it is not a subject which lends itself exclusively to that type of testimony. Lay witnesses could testify to what they observed and from all the testimony it was for the jury to determine the ultimate question.

Under ordinary circumstances expert opinion evidence

is to be considered and weighed by the triers of fact like any other testimony. See, 32 C. J. S., Evidence, § 569, p. 390; Morse v. Chicago, B. & Q. Ry. Co., 81 Neb. 745, 116 N. W. 859.

Appellants contend that the trial court, by refusing to give its instruction No. 1 and by the giving of its instructions Nos. 2 and 9, failed to properly submit to the jury the issue raised by their answer, and supported by evidence, that they had a right to do what they did because what they did was reasonably necessary to prevent the waters of the Little Blue from creating and establishing a new channel across their lands.

"A riparian owner may restore to its former channel a stream which erosion has caused to flow in a new channel upon his land, providing he does so within a reasonable time after the new channel formed and before the interests of lower riparian proprietors along the course of the old channel would be injuriously affected by such action on his part, * * *." Johnk v. Union P. R. R. Co., 99 Neb. 763, 157 N. W. 918, L. R. A. 1916F 403. See, also, Whipple v. Nelson, 143 Neb. 286, 9 N. W. 2d 288.

What is said of restoring a stream to its former channel would likewise be true of keeping the stream in its original channel. But this right is subject to the following: "'The owners or proprietors of lands bordering upon either the normal or flood channels of a natural watercourse are entitled to have its water, whether within its banks or in its flood channel, run as it is wont to run according to natural drainage, and no one has the lawful right by diversions or obstructions to interfere with its accustomed flow to the damage of another.' Beetison v. Ballou, 153 Neb. 360, 44 N. W. 2d 721." McGill v. Card-Adams Co., 154 Neb. 332, 47 N. W. 2d 912.

The following taken from Fremont, E. & M. V. R. R. Co. v. Harlin, 50 Neb. 698, 70 N. W. 263, 61 Am. S. R. 578, 36 L. R. A. 417, is applicable here: "The next argument is that the court refused to instruct the jury, on

behalf of the railroad company, to the effect that if the jury found that the ditches were properly constructed with reference to the use of the same for railway purposes, that they should find for the railroad company. * * * The material issue on trial was not whether the ditches were sufficient and proper for the draining of the railroad company's right of way and road-bed, but the material issue was whether the railroad company had so constructed its ditches as to unnecessarily and negligently injure the property of its neighbor. The instruction under consideration refused by the court, if given, would have made the case turn on an immaterial issue. A railroad company might construct a bridge, an embankment, a culvert, or a ditch sufficient for the maintenance and operation of its road, and one entirely proper for that purpose, and yet the improvement made might be of such a character as to unnecessarily and negligently injure the property of an adjoining proprietor. * * * This is not a suit in which the plaintiff claims damages because the railroad company did not properly construct its ditches for railroad purposes, but the principle upon which this action rests is that the railroad company, in the lawful possession and use of its property, so used and managed it as to unnecessarily and negligently inflict an injury upon its neighbor."

We find that the appellants had a fair trial and since their contentions are without merit we affirm the verdict and judgment of the trial court.

AFFIRMED.