MICHAEL WESTON, A MINOR, BY WILLIAM M. WESTON, HIS FATHER AND NEXT FRIEND, APPELLEE, V. GOLD & COMPANY, A CORPORATION, ET AL., APPELLANTS.

94 N. W. 2d 380

Filed January 30, 1959. No. 34393.

*Stewart, Stewart & Calkins* and *Floyd A. Sterns,* for appellant Gold & Company.

*Woods, Aitken & Aitken,* for appellant Otis Elevator Company.

*Jack Devoe, Merril R. Reller,* and *John McArthur,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action for damages by Michael Weston, a minor, by William M. Weston, his father and next friend, plaintiff and appellee, who will hereinafter be referred to as plaintiff, against Gold & Company, a corporation, and Otis Elevator Company, a corporation, defendants and appellants. The case was tried to a jury and a verdict was returned in favor of plaintiff and against both defendants for $5,000. The defendant Gold & Company, which will hereinafter be referred to as Gold, filed an alternative motion for judgment notwithstanding the verdict or for a new trial. The defendant Otis Elevator Company, which will be hereinafter referred to as Otis, filed separately a motion for judgment notwithstanding the verdict and one for a new trial. The motions of these parties were overruled. The defendants separately appealed and each has separately set out alleged errors which it contends entitle it to have the judgment reversed. These assignments, or such of them as require consideration herein, will be discussed along with the facts as they have been presented by the record and the controlling legal principles.

Factually, as disclosed by the record and necessary to disclose herein, the action grew out of an accident which occurred on July 13, 1954, on an escalator in a department store owned and operated by Gold. As to this factual statement there is no substantial dispute. The escalator or portion involved descended on an incline from the second to the first floor. It was installed by Otis in 1947 and 1948. It was regularly inspected by

employees of Otis but there was no evidence that the operation was under its control. Gold was the owner and in control of operation following installation to and including July 13, 1954. The escalator, as it passed downward between the two floors, was a series of steps and between the back of each step and the front of the next above was a riser. There was no vacant or open space between the step and riser. The escalator was operated between stationary panels on each side which were estimated at from 2 to 3 feet apart. There were handrails on top of the panels. The movement of the escalator was over fixed tracks which were not exposed to view. The steps in their turn as they reached the first floor passed thereunder and out of view. The normal space between the ends of the steps and risers and the enclosing panels on each side was from 3/32 to 5/32 of an inch. The purpose of the escalator was to provide passage for customers of Gold from the second to the first floor. In other words, it was for the purpose of allowing customers to step on a step and there remain until that step had reached the first floor. There was nothing protective against the space between the ends of the steps and the adjacent panels except the narrowness of the space. It is true that there was a trim molding extending from the top of the escalator to a point near the first floor, at a distance of about 1 inch above the front and 10 to 11 inches above the back of the steps of the escalator, but the defendants have not contended that this had a protective purpose.

On July 13, 1954, the plaintiff and his mother got on the escalator at the second floor and proceeded to descend to the first floor. The plaintiff, facing forward, preceded his mother. In some manner, when they were near the first floor the right shoe and foot of plaintiff became caught between a step or riser or both and the panel on the right side, and his large toe was amputated and his foot was otherwise injured.

The plaintiff pleaded that the cause of the accident was

negligence on the part of the two defendants. The pleading in this respect is found in paragraphs 5, 6, and 7 of the petition as follows:

"5. When approximately 3 or 4 steps from the first floor of said store, and while the said escalator was still in motion, plaintiff's right foot was caught and held in a void created by the edge of the step and the sidewall of said escalator; that the said defendants and each of them, were careless, and negligent in that they failed to install, equip, or erect said escalator with any protective devices in preventing a void occurring between the edge of the step and the sidewall of said escalator.

"6. That the defendants, and each of them, did negligently, carelessly, improperly and unlawfully design, construct, install, maintain and operate said escalator in a dangerous, unsafe and hazardous condition, in that as the steps approached the floor there was a void created between the edge of the step and the side wall of said escalator large enough to catch the toes or front part of a shoe of this plaintiff thereby making it hazardous for persons using said escalator and especially this plaintiff.

"7. That all times herein mentioned defendants and each of them knew, or in the exercise of reasonable care under the circumstances should have known, of the dangerous and hazardous condition caused by said void and that said defendants, and each of them, at all times herein mentioned failed and neglected to warn the plaintiff or take any means to protect the plaintiff about and from the aforesaid hazardous and dangerous condition."

The answers, to the extent necessary to refer to them herein, are that Otis generally denied the allegations of the petition, and Gold generally denied the allegations of the petition and pleaded that the accident was the result of negligence on the part of plaintiff and his mother.

The testimony given to support the allegations of negligence was very brief. The mother of plaintiff testified substantially that the plaintiff, then of the age of 5 years, got on the escalator ahead of her and that he stood quietly on the downward journey; that when they came near the bottom she saw a crack approximately 1½ inches wide on the side between the end of the step or riser and the panel; and that the toe of plaintiff's shoe was caught in this crack.

There is no direct testimony as to the cause of this claimed separation.

The testimony of witnesses for the defendants was to the effect that such a wide separation was impossible in the light of their knowledge of the construction of the escalator.

The shoe worn by plaintiff had a rubber sole and in this connection the defendants' witnesses substantially testified that in their opinion the toe of the shoe could not have become engaged as it was except by contact and pressure into the space between the step and panel made by the plaintiff himself. The testimony of defendants negatived any contention that there was any defect in construction of the escalator or in its condition for other reasons at the time.

On the evidence here summarized the court submitted the issue of negligence of the defendants to the jury.

Both defendants insist that under no theory of pleading or proof is the evidence sufficient to sustain a verdict holding them or either of them guilty of negligence. It should be pointed out that from an examination of the instructions given it may not be said with certainty whether it was the purpose to submit the case solely under the doctrine of res ipsa loquitur or also under the general rule which exacts proof of an act or acts of negligence charged by a preponderance of the evidence as a condition of a right of recovery. It is assumed therefore that it was the purpose to submit it on both theories. The case was submitted under the doctrine

of res ipsa loquitur as to both defendants. This was separately assigned as error.

A submission under this theory is a departure from the general rule that in actions wherein recovery of damages is sought on the ground of negligence the burden rests upon the plaintiff to prove by evidence the negligence which has been asserted.

Two late statements of rules to be observed in determining whether or not a case based on negligence shall be submitted to the jury are the following:

"In an action for damages for negligence the burden is on the plaintiff to show by direct or circumstantial evidence that there was a negligent act or omission by the defendant and that it was the proximate cause of plaintiff's injury or a cause which proximately contributed to it." Egenberger v. National Alfalfa Dehydrating & Milling Co., 164 Neb. 704, 83 N. W. 2d 523. See, also, Sipprell v. Merner Motors, 164 Neb. 447, 82 N. W. 2d 648; Morse v. Gray, 166 Neb. 557, 89 N. W. 2d 842.

"In every case, before the evidence is submitted to the jury, there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed." Krichau v. Chicago, B. & Q. R. R. Co., 150 Neb. 498, 34 N. W. 2d 899. See, also, Coyle v. Stopak, 165 Neb. 594, 86 N. W. 2d 758; Morse v. Gray, *supra.*

A familiar definition of the doctrine of res ipsa loquitur is as follows: "The thing speaks for itself. Rebuttable presumption that defendant was negligent, which arises upon proof that instrumentality causing injury was in defendant's exclusive control, and that the accident was one which ordinarily does not happen in absence of negligence." Black's Law Dictionary (3d ed.), p. 1539. See, also, Miratsky v. Beseda, 139 Neb. 229, 297 N. W. 94; Watson Bros. Transp. Co. v. Chicago, St. P., M. & O. Ry. Co., 147 Neb. 880, 25 N. W. 2d 396.

This submission is attacked as error on two grounds. On one of these grounds a like attack is made by both defendants. On the other the attack is by Otis. By the attack in which the two have joined they assert that the doctrine is not available to plaintiff since by his petition he charged specific acts of negligence, and that therefore and thereby he barred himself from the right to have a cause of action prima facie sustained by a presumption flowing from proof of an injury caused by an instrumentality under the exclusive control of the defendants or one of them.

The rule in this jurisdiction in this connection is as it is asserted to be by the defendants. This is not accepted in all jurisdictions but it has been accepted in some of them. It was accepted and declared in Mischnick v. Iowa-Nebraska Light & Power Co., 125 Neb. 598, 251 N. W. 258, and from this there has been no departure. In that case it was said: "The doctrine of res ipsa loquitur proceeds on the theory that, under special circumstances which invoke its operation, the plaintiff is unable to specify the particular act of negligence which caused the injury, but if the petition alleges particular acts of negligence, then the plaintiff, in order to recover, must establish the specific negligence alleged, and the doctrine of res ipsa loquitur cannot be applied." See, also, 65 C. J. S., § 220 (11), p. 1032.

From what has been quoted herein from the allegations of the petition it is made conclusively to appear that the plaintiff alleged particular acts of negligence. It follows of course that the court erred in submitting the case to the jury under the res ipsa loquitur doctrine.

The effect of the other ground urged by Otis alone that the court erred in submitting the case as to it under the res ipsa loquitur doctrine is to say that it may not be applied to this defendant since it has application only where the proof discloses that the defendant was in exclusive control of the instrumentality causing the injury.

The theory of the contention of this defendant is

sustained by the decisions of this court. In Miratsky v. Beseda, *supra,* this court said: "Before the rule (res ipsa loquitur) can be applied, 'It must appear * * * that the negligent cause or thing which produced the injury complained of was wholly and exclusively in the possession, and under the control or management, of defendant.'" The pertinent part of this was quoted from 45 C. J., Negligence, § 781, p. 1214.

There is no evidence that the instrumentality involved in this incident was either in the possession or under the control of Otis. It was exactly to the contrary. The evidence disclosed that the escalator was installed by it, and that its employees made frequent inspections of it and its operations in order to see that it was in proper operation and proper operating condition, but there was no evidence of possession or control.

It follows, in the light of this, that on both theories, as contended, the court erred in submitting the case to the jury under the res ipsa loquitur doctrine. It may not well be said that the error was not prejudicial.

Returning now to the question of whether or not under the general rule there was evidence sufficient to sustain a verdict in favor of plaintiff and against the defendants on any theory of pleading or proof, it becomes necessary to make a further review of the evidence.

This review must be made acceptable to the following:

"In testing the sufficiency of evidence to support a verdict it must be considered in the light most favorable to the successful party, that is, every controverted fact must be resolved in his favor and he should have the benefit of every inference that can reasonably be deduced therefrom." Smith v. Platte Valley Public Power & Irr. Dist., 151 Neb. 49, 36 N. W. 2d 478. See, also, Stolting v. Everett, 155 Neb. 292, 51 N. W. 2d 603; Davis v. Spindler, 156 Neb. 276, 56 N. W. 2d 107; Koutsky v. Bowman, 157 Neb. 919, 62 N. W. 2d 114.

"If a motion for directed verdict made at the close of the evidence in a case should have been sustained for

want of evidence to support a verdict in favor of the party against whom made, it is the duty of the court on motion for judgment notwithstanding the verdict timely made to sustain such motion to set aside the verdict and to render judgment pursuant to the motion for directed verdict." Hamilton v. Omaha & C. B. St. Ry. Co., 152 Neb. 328, 41 N. W. 2d 139. See, also, Stolting v. Everett, *supra*.

As is made apparent by the part of the petition quoted herein the plaintiff charged as negligence: Failure to install, equip, or erect the escalator with protective devices to prevent a void occurring between the edge of the step and side wall; designing, constructing, installing, maintaining, and operating the escalator in a dangerous, unsafe, and hazardous condition in that as the steps approached the floor there was a void created between the edge of the step and the side wall of the escalator large enough to catch the toes or front part of the shoe of plaintiff of which the defendants knew or in the exercise of ordinary care should have known; and that the defendants failed to warn or take any means to protect against the hazardous condition.

The mother of the plaintiff testified in substance that she saw an open space between the end of the step and the side wall of about 1½ inches. This was seen practically instantaneously with the catching of the foot. She further testified that plaintiff was not moving about in his descent but was standing still facing forward; that the shoes plaintiff was wearing were Keds; that after the accident the shoe and foot were caught and someone untied the shoe so that the foot could be removed; and that the escalator moved after the shoe and foot were caught but as to how much she could not tell. There was no other material testimony by this witness or any other of incidents actually and at the time involved in the occurrence as distinguished from causative factors, if any, inhering in the escalator and its appliances.

The evidence of plaintiff therefore discloses only that

there was a widening of the space between the end of a step and the side wall and that in this the shoe and foot of plaintiff were caught. The plaintiff adduced no evidence the effect of which was to say directly or by reasonable inference that this separation was caused by negligence of the defendants or either of them. Since the doctrine of res ipsa loquitur is not applicable in the case this lack of evidence may not be said to be supplied by presumption. In addition it is pointed out that there is nothing in the evidence of the defendants to indicate either directly or by inference that the defendants or either of them was at the time actively negligent.

It is true that there was evidence on the part of the defendants, by opinion which was entirely speculative in quality and character, as to what caused the accident but from this no inference of negligence on the part of either defendant could reasonably flow.

There was no evidence adduced by the plaintiff and none by the defendants that the separation of the step from the side wall except for the maximum distance of 5/32 of an inch temporarily, permanently, or specifically at the time this accident occurred was the result of any negligent act or failure to act in installing, equipping, erecting, designing, maintaining, or operating the escalator or that there was any hazard in its use by anyone who, in the exercise of ordinary care, was being conveyed thereon. The evidence of the defendants was to the contrary.

One charge of negligence is that the defendants failed to warn or take some means to protect against the hazardous condition flowing from the use of the escalator. The evidence discloses that there was not any notice or warning device relating to the use of the escalator. There was however no evidence that the use of the escalator by a person in the exercise of ordinary care presented any hazard or hazardous condition which required the giving of notice or warning.

·In the light of these observations and the principles herein· set forth it becomes apparent that the plaintiff has failed to sustain by evidence the allegations of negligence contained in his petition and, the question having ·been properly raised, the case should not have been submitted to a jury.

At the conclusion of the evidence the defendants separately moved for a directed verdict. In the light of what has been said these motions should have been sustained. These motions and the rulings thereon established the right of the defendants to file and to have a determination on their motions for judgment notwithstanding the verdict. See § 25-1315.02, R. R. S. 1943; Kohl v. Unkel, 163 Neb. 257, 79 N. W. 2d 405. In the light of the conclusion that there was no evidence to sustain a verdict in favor of the plaintiff it was the duty of the court to sustain the motions. See Hamilton v. Omaha & C. B. St. Ry. Co., *supra;* Stolting v. Everett, *supra;* Pavlicek v. Cacak, 155 Neb. 454, 52 N. W. 2d 310; Borcherding v. Eklund, 156 Neb. 196, 55 N. W. 2d 643; Hickman v. Parks Construction Co., 162 Neb. 461, 76 N. W. 2d 403.

Accordingly the judgment of the district court is reversed and the cause remanded with directions to sustain the motions for judgment notwithstanding the verdict and to render judgment dismissing plaintiff's action.

REVERSED AND REMANDED WITH DIRECTIONS.