HARRY C. BEETISON, APPELLANT, v. OTIS M. BALLOU, APPELLEE.

44 N. W. 2d 721

Filed November 22, 1950. No. 32807.

H. A. *Bryant,* for appellant.

*Max Kier,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YFAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

So far as concerned in this appeal, plaintiff brought this action for a mandatory injunction ordering the defendant to remove a dike constructed on his land, and that the defendant be permanently enjoined from con-

structing or maintaining any embankment upon his land interfering with the natural flow of floodwaters from Wahoo and Salt Creeks, and for equitable relief. Defendant joined issue and prayed for a dismissal of the action. After trial the court found generally for the defendant and dismissed the plaintiff's petition. Plaintiff appeals. We reverse the judgment of the trial court and remand the cause with directions.

For brevity of description and better understanding of the factual situation, and without being accurate in detail, we have prepared and use a chart for the purpose of showing the relative position of the lands, the physical conditions, and the structures involved.

The land involved in this action is bottom land and generally in the flood plane of Wahoo and Salt Creeks. Wahoo Creek drains an area of about 500 square miles. Salt Creek at the point where Wahoo Creek joins it drains an area of over 1,000 square miles. The Sioux City line of the railroad forms a dam across the valley with the outlets as indicated under the bridges across the streams. Below the land involved, the Omaha line of the railroad and the highway form similar dams with similar outlets.

Plaintiff owns the land described on the chart as plaintiff and plaintiff-1, the latter tract apparently having been purchased about the time or after this action was initiated.

Defendant owns the land described as defendant and defendant-1, the latter tract having been purchased about the time or after this action was initiated.

In November 1945, defendant built a drain ditch and dike along the line indicated on the chart as A to B— a distance of 1,750 feet. The work began at the railroad track at A, followed the north bank of Wahoo Creek for some 400 feet, and then straight east—all on defendant's land. It is about this dike that plaintiff complains.

Plaintiff's evidence shows that by natural course, floodwaters from Wahoo Creek flow out and across the lands marked defendant-1, and then, in part at least, across defendant's land, then onto the Stanley land, and finally into Salt Creek. Plaintiff offered evidence that such was the course of the waters at flood periods in 1908 and on occasion thereafter, prior to the building of the dike.

Plaintiff's evidence further is that after the dike was constructed severe floods occurred in 1947 and thereafter; that in those floods the floodwaters from Wahoo Creek flowed across defendant-1, came against the dike, were turned and formed a channel along the south side of the dike, and flowed down upon his lands; that on several occasions flowing water was two or more feet

deep south of the dike; and that at the same time there was little, if any, water on the north side. He testified that those waters destroyed crops, washed his land, and left silt and debris upon it. Whenever we use the word "debris" here, we mean logs and material of that character that are carried by swiftly moving waters.

Defendant's evidence is in accord with that of the plaintiff. Defendant's witnesses testified that the natural course of the floodwaters from Wahoo Creek was across defendant's lands and onto the Stanley lands and plaintiff's lands.

Defendant testified that he dug the ditch in 1945; that he put the dirt removed on the south side of the ditch forming the dike because he had to put it somewhere, although one of his witnesses testified that he saw evidence of dirt having been removed from south of the dike at its lower end. Defendant testified that he built the ditch to drain surface waters, and that he put the dirt on the south side so as to protect his property and to prevent the floodwaters from Wahoo Creek filling his drain ditch with silt and rendering it useless. It seems obvious that if floodwaters from Wahoo Creek would come upon his land with sufficient volume and velocity to deposit damaging silt in his drain ditch, those waters would also flow upon and across defendant's lands, as plaintiff's evidence shows they did before the dike was built.

The evidence is that from about 500 feet east of point A, defendant's land slopes to the west. Defendant in constructing the dike put a tube and floodgate through it at point A. The floodgate was so constructed that it opened so that waters from defendant's lands would flow south into Wahoo Creek, but in the event of waters coming against it from Wahoo Creek, it would close and prevent the flow onto defendant's land at that point. Defendant testified that the floodgate was so constructed to prevent the tube filling with silt from floodwaters of Wahoo Creek. This part of the dike was washed out.

in part in June 1947, and later restored by defendant.

That the dike had served its purpose of preventing the drain ditch from filling with silt is established by defendant for he testified that the land south of the dike from point A halfway to point B had been built up with silt deposited there by floodwaters. Again it appears obvious that floodwaters were materially retarded in their flow by the dike so as to cause the deposit of the silt. One of defendant's witnesses testified that he had seen floodwaters go across defendant-1, come against the dike at its lower end, form a channel, and then flow east upon plaintiff's land past point B. Defendant's engineer witness testified that south of point B "for some hundred feet" he saw where the "heavy flow" had gone across from defendant-1 onto plaintiff's land.

The evidence also is that, depending on the contour of the land, floodwaters from Wahoo Creek would have to rise between 14 inches and 3½ feet above the land south of the dike before they would flow across onto defendant's land. It also appears from the evidence that when all the land is flooded above the top of the dike, as it was once in 1947, after the waters had receded to the line of the dike, all the flow of the floodwaters south of the dike is across plaintiff's land and that the flow of waters on defendant's land north of the dike is the run-off from defendant's land.

There is evidence that following severe floods, debris is left on plaintiff's land. There is no evidence of debris being left on defendant's land. In one instance after one flood the defendant's evidence is that there was no debris left on his land.

Defendant's theory is that plaintiff has no cause for complaint for several reasons. One is that his land is open to the east and that water flowing past point B will seek its own level and flow backward and flood his lands. Obviously that would depend upon the volume and duration of the flood. This contention ignores the issue. Plaintiff is not complaining about waters being on de-

fendant's land but is complaining of the change of the course of the waters at floodtime. This contention seems to admit the merit of plaintiff's complaint. Defendant's second contention is that most of the floods in the area are caused by floodwaters of Salt Creek damming up the water at the junction with Wahoo Creek causing Wahoo Creek to back up and then overflow. It appears obvious that that situation is one caused by natural forces.

It is also defendant's contention that floodwaters are gathered and unable to escape to the east because of the Omaha railroad line and highway and then back up and flood all the lands involved here, and that in times of great floods, such as the one in June 1947, all the lands are flooded and the dike is of no avail to anyone. The evidence is that in one of the 1947 floods all that appeared of the dike was a ridge of brome grass showing through the waters. This contention ignores the situations that arise when floods are not that severe, but severe enough to do the damage about which plaintiff complains. It ignores the difference in effect on land and crops of swiftly moving high water in a flood plane, and rising shallow waters seeking their own level moving in against the current over relatively level land. It ignores the difference shown by the evidence of washed land, destroyed crops, debris deposited, etc. It is a difference illustrated again by this evidence as to silt. We have recited defendant's evidence as to the purpose and effect of the dam in keeping silt off his land. The evidence of defendant's engineer is that the waters moving in on defendant's land from the east deposited no harmful silt in the drain ditch. It is likewise apparent that the waters flowing over the dam at extreme high waters carried no material amount of silt, for the evidence is that the drain ditch operated and served its purpose after the floods.

Defendant contends that he has the right to drain as against surface waters. That problem is not an issue here.

We stated the rules of law applicable here in Stocker v. Wells, 150 Neb. 51, 33 N. W. 2d 445:

"The relief ordinarily granted in equity is such as the nature of the case, the law, and the facts demand, not at the beginning of the litigation, but at the time the decree is entered."

"It is the duty of those who build structures across natural drainways to provide for the natural passage through such obstruction of all waters which may be reasonably anticipated to drain there. This is a continuing duty."

"A stream which is accustomed to extend itself beyond its banks in times of high water and to flow over the adjacent lands in its flood plane in a broader stream, retains its character as a live stream, and the law relating to floodwaters applies."

"The flood channel must be considered as a part of the channel of the stream and no structures or other obstructions can be placed in its bed which will have a tendency to dam the water back upon the property of upper riparian or adjacent owners."

"The owners or proprietors of lands bordering upon either the normal or flood channels of a natural watercourse are entitled to have its water, whether within its banks or in its flood channel, run as it is wont to run according to natural drainage, and no one has the lawful right by diversions or obstructions to interfere with its accustomed flow to the damage of another."

"Injunction is a proper remedy to prevent recurring damages to crops or continuing injury to lands by water unlawfully diverted from a natural watercourse over or upon lands of adjacent or adjoining proprietors."

"Where a person constructs a dam or dike that diverts floodwater from its natural flood plane where it was wont to flow in its natural state for many years before the construction of the obstruction, injunction affords the proper remedy to relieve from the continuing damage from recurring floods which are certain to occur

in the future and which are the proximate result of the dam or dike construction."

We also held in Cooper v. Sanitary District No. 1, 146 Neb. 412, 19 N. W. 2d 619, that a riparian owner may not dam, retard, or bank against the floodwaters of a running stream to the injury of lower proprietors.

Defendant relies upon the Stocker case in that there we denied injunctive relief as to a dike that ran parallel to the bank of the river and parallel to the flow of the river, both at normal and flood stages. This contention ignores first the fact that for some 1,200 feet the dike here runs diagonal to the flow of the creek at flood stage. It ignores also the material fact that in the Stocker case the dike did not in anywise interfere with the flow of the water. Here the evidence of both parties is that the dike involved does interfere with the flow of the water.

There is no contention here that floods will not recur in the future. The admitted purpose of the dike is in anticipation of that recurrence.

The decree of the district court is reversed and the cause remanded with directions to enter a decree granting the plaintiff a mandatory injunction requiring the defendant to remove the dike so as not to dam, retard, bank against, or divert the flow of water at flood stage over the lands involved, and granting the plaintiff a permanent injunction against the rebuilding of such a structure.

REVERSED AND REMANDED WITH DIRECTIONS.