HERBERT C. BALLMER ET AL., APPELLANTS, v. ARCHIE F. SMITH, APPELLEE, VINAL MCVICKER ET AL., INTERVENERS-APPELLANTS, EDWIN OWENS ET AL., INTERVENERS-APPELLEES.

63 N. W. 2d 862

Filed April 2, 1954. No. 33461.

*Bannister & Deines,* for appellants.

*E. A. Cook, Jr.,* and *W. A. Stewart,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action in equity to enjoin the defendant from making changes in the course and elevation of the banks of a watercourse known as Stump Creek. Plaintiffs secured a restraining order and temporary injunction. Defendant denied the right of plaintiffs to relief and sought a decree authorizing the restoration of the natural ridge of Stump Creek, and that he be authorized

to straighten Stump Creek by making cuts on his own land. He sought damages for loss of crops during the pendency of the action because of the temporary injunction. Before trial landowners along Stump Creek and others along a watercourse known as Hay Valley intervened, some to sustain the position of the plaintiffs and some to sustain the position of the defendant. The litigation remained essentially a contest between the plaintiffs and defendant. The trial court heard the evidence at length and entered a decree generally favorable to the defendant, dissolved the injunction, and allowed damages. Plaintiffs superseded the judgment and appeal here.

The plaintiffs contend that the trial court, in part, made findings of fact and entered a decree not sustained either by the pleadings or the evidence. There is merit in the contention. The matter is here for trial de novo. We so try it, make findings of fact, and direct a decree.

For a clearer and briefer exposition of the facts we include herein a chart showing approximately the streams and cause of this controversy.

The area that need be shown lies all in a quarter section of land owned by defendant Smith. Plaintiffs Ballmers' land lies immediately to the south of defendant's land and plaintiffs Yorks' land lies to the south and east of Ballmers' land and in the Stump Creek valley.

Stump Creek is a watercourse arising several miles to the north, meandering across defendant's land in the manner shown, then entering plaintiffs Ballmers' land, and eventually reaching the North Platte River. The fork of Hay Valley shown on the chart arises on defendant's land. Hay Valley is below the level of Stump Creek. There is a natural bank around the outer rim of Stump Creek. Its lowest point is about at point A on the chart. Several years ago the defendant, or his predecessor in title, built an irrigation lateral running from high ground at the point N following around the outer bank of Stump Creek at H to A to I and then generally toward and beyond point M. This was used to irrigate the land in the southeast corner of defendant's land. There is some contention here that that ditch was on top of the bank. However, the preponderance of the evidence, including an aerial photograph and the testimony of witnesses as to the uneven nature of the top of the bank, sustains a finding that this ditch was below or on the outer side of the bank of Stump Creek.

The evidence also is definite that during the years since 1915, at times of great floods Stump Creek overflowed its banks and in a flood plain the water found its way into Hay Valley. At normal times water remained within Stump Creek. All parties agree that in 1947 and 1948, flood waters ran over the bank at and on either side of A and down into Hay Valley. In 1947, it washed out the irrigation lateral at point A. It was repaired. The lateral was again washed out at point A in 1948, and was not repaired. It does not appear on an air photograph taken in 1951.

Starting in a depression, evidently caused by a cow-

path at point A, the bank there was washed some 3 feet or more wide and to some depth by the 1947 and 1948 floods. If not repaired, it will permit high waters to flow from Stump Creek to Hay Valley and it may be reasonably anticipated eventually establish a permanent channel or cutoff at that point. From point A the flood waters overflowed toward either side distances of from 50 to 100 feet. There is evidence that the bank generally was covered with a natural grass sod. It is washed out at A. There are depressions in the bank at either side of A, over which water ran. There is no satisfactory evidence that the natural level of the banks at those points was materially lowered.

There is evidence that at different times the parties undertook to solve the problems presented by this stream at this point. It appears that plaintiffs were at all times willing that defendant fill the wash at the cowpath so as to bring it to the level of the natural bank on either side. At the trial they affirmatively agreed that such could be done. Defendant in August 1951, desired to rebuild his lateral. There is no showing of a desire to rebuild on its old line. Rather his testimony shows that he desired to fill the wash at A and the other depressions in the bank so as to materially raise the bank level at the low points and run his irrigation lateral on the higher elevation, and thereby irrigate more land in the southeast corner of his land. A declared intention to do that in part produced this litigation.

In Stolting v. Everett, 155 Neb. 292, 51 N. W. 2d 603, we restated the rules applicable to this situation. They are:

" 'A riparian owner may restore to its former channel a stream which erosion has caused to flow in a new channel upon his land, providing he does so within a reasonable time after the new channel formed and before the interests of lower riparian proprietors along the course of the old channel would be injuriously affected by such action on his part, * * *.' "

"What is said of restoring a stream to its former channel would likewise be true of keeping the stream in its original channel. But this right is subject to the following: ' "The owners or proprietors of lands bordering upon either the normal or flood channels of a natural watercourse are entitled to have its water, whether within its banks or in its flood channel, run as it is wont to run according to natural drainage, and no one has the lawful right by diversions or obstructions to interfere with its accustomed flow to the damage of another." * * *.' "

The trial court decreed that the "ridge between Stump Creek and Hay Valley (could be) restored to the height as it existed prior to the 1947 and 1948 floods." Plaintiffs assert that this is too indefinite to be enforced. We find no contention in this evidence that the natural bank of Stump Creek was lowered by floods prior to 1947 and 1948. There is evidence that it was built up by earlier floods.

The evidence is that the natural grass sod banks remain intact within a few feet on either side of the wash at point A, commonly referred to in the evidence as the wash at the cowpath.

As to this feature of the case we hold that the trial court should enter a decree granting to the defendant, and his sustaining interveners, permission to fill that wash to a level with the natural grass top in close proximity on either side, and further enjoining the defendant and interveners from in any other wise raising the levels of the top of the bank of Stump Creek. The area that may be filled under the provisions here stated is the wash in the bank of Stump Creek shown by picture Exhibit 5.

The location of the defendant's irrigation lateral and the rebuilding of it is involved in the evidence. We see no reason why defendant should not be permitted to build a lateral along the outer bank of Stump Creek provided that the top of the banks of the lateral shall in

no event be higher than the bank of Stump Creek. Stated otherwise the banks of the lateral shall in nowise obstruct or retard flood waters overflowing the bank of Stump Creek.

Defendant was preparing to implement another change in 1951, which also precipitated this litigation. He proposed to cut a channel from the point L to M in Stump Creek, fill up the old channel northeast of those points, and build a dike and lateral thereon so as to carry irrigation water from the point N across to high land at point M and beyond. The evidence is that such construction would raise the level of the bank of Stump Creek from 2 to 4 feet, and thus materially prevent water flowing into Hay Valley at flood times. The evidence also is that such a construction would materially increase the danger of damage to the plaintiffs and interveners in the lower Stump Creek watercourse area. The trial court by silence denied that request. Defendant does not here seek to have it granted.

The rule is: "A riparian owner may not dam, retard, or bank against the floodwaters of a running stream to the injury of lower proprietors." Beetison v. Ballou, 153 Neb. 360, 44 N. W. 2d 721.

Having by silence denied the right to make the construction L to M the trial court found that the defendant should be permitted to make a change in the channel of Stump Creek from J to K; "That the irrigation lateral from the north to the south and southeast should be permitted to follow the new construction at the same approximate level as the old lateral, and that the construction of such ditch would not interfere with the water flowing in times of excessive rains from Stump Creek to the Hay Valley water course"; and "That the plaintiffs will not be materially damaged by any of such construction." It decreed that defendant could staighten Stump Creek at the point indicated and "may construct his irrigation lateral no higher than the former lateral." There is no evidence in this record that the defendant

intended or desired to build a cutoff along the line J to K; no evidence that a lateral at that location could or would be of benefit to him; no evidence as to the effect of such a construction on the flood waters of Stump Creek; and no evidence of what effect it would have on plaintiffs and their sustaining interveners. In short there is no evidence to sustain the findings so made.

There is no way for these plaintiffs to protect themselves from the effect of this decree. Obviously it must be set aside. The rule is that a judgment of an equity court, where the court is the trier of facts, unsupported by any competent evidence, cannot stand. Fischer v. Wilhelm, 140 Neb. 448, 300 N. W. 350.

The trial court allowed damages to the defendant and against the plaintiffs in the sum of $597. The temporary injunction enjoined defendant from changing the elevations of the channels and banks of Stump Creek and from erecting any dam, embankment, or lateral above the bank with the exception that defendant was not enjoined from constructing a flume for the purpose of irrigating his corn crop. Defendant sought a recovery of damages alleging that because of the temporary injunction he was prevented from repairing his irrigation lateral. He claimed damages for loss of crops in 1951 and 1952.

The question of liability of the plaintiffs on the bond is not raised here and is not determined. Plaintiffs challenge the sufficiency of the evidence to sustain the judgment.

The evidence stands without dispute that following the 1948 flood, the lateral was not repaired and no irrigation had on the involved area thereafter, although there was no injunction in the matter until August 1951. Defendant testified that to build a flume, which the temporary injunction permitted, would have cost $300 to $400. He did not build it.

Defendant testified that there were 9 to 10 acres that he could not irrigate. He testified as to no measure-

ments but rather to what he thought and 9 acres was no more accurate than 10. He testified as to a "renter" but made no statement as to the renter's interest in the crop. He clearly sought recovery for the entire crop including the renter's undisclosed interest. He testified that the corn in 1951 was not as good quality as that of a later year. It was sold before Christmas in 1951, apparently at market price. He did not testify as to the price received but rather as to the customary price for corn which varied from $1.30 to $1.35 per bushel "in the fall of 1951." He testified that the corn on the land he did not irrigate produced "about" 40 bushels per acre and "around" 80 bushels per acre on his irrigated land. When asked if he picked rows separately on the irrigated and nonirrigated land so as to test the production, he replied that he did not. He was asked if he had any way of computing the difference in production, and stated that "it wouldn't have been worth the difference to have picked it separately." As to his 1952 alleged loss he testified that he wanted to put the land in alfalfa, but wanted to level it first and there was no use in leveling "if Stump Ditch was going to take its course out that way"; that he did not want to put it in alfalfa without watering it or leveling over the rough spots that had been made by the floods, and so he summer-fallowed it; and that his loss could not be determined in dollars and cents. He then, stating a "general opinion on irrigated land," fixed the loss at $40 per acre on "Nine or ten" acres.

We recently in Ricenbaw v. Kraus, 157 Neb. 723, 61 N. W. 2d 350, restated the rules as to proof required in cases of this kind. Two rules therein are applicable:

" 'The general rule is that damages, to be recoverable, must be direct and certain. Contingent, remote, or speculative damages, such as the loss of speculative profits, will not be allowed.' "

" 'In case the crop is matured the value is usually proved by showing the market value, less the necessary

cost of harvesting, threshing, and transporting to market.' " .

Any judgment for damages under this evidence would be speculative, conjectural, and uncertain.

The judgment of the trial court is reversed and set aside. Defendant's prayer for damages is denied. The cause is remanded with directions to enter a decree permitting defendant, and the sustaining interveners, to fill the washout as defined and limited hereinbefore, and enjoining any raising of the banks of Stump Creek as hereinbefore set out. All costs are taxed to the defendant Smith.

REVERSED AND REMANDED WITH DIRECTIONS.